THE STATE v. L. W. VAN DORAN.

*Practicing Medicine—Indictment—Abandonment of Excep-*
*tions — Constitution—Police Power.*

1. An indictment which charges that the defendant did practice, *or* attempt to practice, medicine, etc., is not defective because of the use of the disjunctive conjunction.

2. To constitute the offence of practicing medicine under the Act of 1881, without registration, etc., it is not necessary to allege or prove the person practiced upon; it is sufficient if the defendant held himself out to the public as a physician.

3. That act is constitutional, being the exercise of the police power of the State, and the proviso that it shall not apply to midwives nor to non-resident consulting physicians does not bring it within the inhibition of Const., Art. 1, § 7, prohibiting exclusive privileges.

4. While a patent medicine vendor is not within the statute, yet one who holds himself out to the public as a physician, makes diagnoses of diseases, etc., cannot protect himself because he administers medicines prepared by himself.

5. The abandonment of exceptions to a bill of indictment for a misdemeanor, by a statement in defendant's brief, is a waiver of the defects.

SHEPHERD, J., dissenting.

This was a CRIMINAL ACTION for the statutory offence created by chapter 181 of the Laws of 1889, tried at the Spring Term, 1891, of the Superior Court of WASHINGTON County, before *Bryan, J.*

The indictment was in form as follows:

"The jurors for the State, etc., * * * present that L. W. Van Doran, in Washington County, on the 1st day of March, 1891, unlawfully and wilfully did practice, or attempt to practice, medicine or surgery, the said L. W. Van Doran not then and there having produced and exhibited before the Clerk of the Superior Court of said county a license obtained from the Board of Medical Examiners of the State of North Caro-

lina, or a diploma issued by a regular medical college prior to the 7th day of March, 1885, nor made oath that he was practicing medicine or surgery in the State prior to said 7th day of March, 1885, and not then and there having obtained from the said Clerk of the Court a certificate of registration, and not then and there having a temporary license so to practice medicine or surgery, contrary to the statute in such cases made and provided, and against the peace and dignity of the State."

It was in evidence that the defendant claimed to have graduated at a medical college in Chicago, and to have lost his diploma. There was no evidence of a license from the Medical Board of North Carolina, but the defendant had applied to the Clerk to be registered as a physician, and his application had been refused.

*The Attorney General*, for the State.
*Mr. A. O. Gaylord* (by brief), for defendant.

AVERY, J.—after stating the facts: Where a statute makes two or more distinct acts, constituting separate stages of the same transaction, indictable (as in the case at bar, the acts of practicing, or attempting to practice, medicine), both or all may be charged in a single count of the indictment. 1 Wharton Cr. Law (7th Ed.), § 390; 10 Am. & Eng. Enc., p. 599*d*; *State* v. *Bordeaux*, 93 N. C., 560; *State* v. *Parish*, 104 N. C., 680.

If the distinct acts, representing the successive stages of the transaction, were connected in the statute by the word " or," it was in accordance with the settled precedents in drawing the indictment to couple the independent clauses by using the word " and" instead of following closely the language of the statute and using "or." Bish. on Stat. Cr., § 244; *State* v. *Harper*, 64 N. C., 129.

109 — 55

The reason for discarding the disjunctive and substituting the conjunctive, was, that usually the alternative charge left the defendant in such doubt as to the nature of the offence which he was held to answer, that he could not intelligently prepare his defence; as where an indictment charged property alleged to have been stolen in "*A or another,*" giving the prosecutor the opportunity to sustain the charge by proving the property in any human being in the world, instead of averring that it was the property of A *and* another (who was shown by the proof to be his partner). *State* v. *Capps,* 71 N. C., 93; *State* v. *Harper,* 64 N. C., 130.

But upon the maxim, *cessante ratione cessat et ipsa lex,* the better rule seems now to be that "or" is only fatal when the use of it renders the statement of the offence uncertain, and not so when one term is used only as explaining or illustrating the other, or where the language of the law makes either an attempt or procurement of an act, or the act itself, in the alternative, indictable. 1 Wharton, C. L., § 294; *U. S.* v. *Potter,* 6 McLean, 186. Where it is manifest that the defendant cannot be embarrassed by uncertainty in preparing his defence by reason of the use of the disjunctive instead of the conjunctive, if the form ordinarily used in drawing the indictment should be treated as an established precedent essential in all cases, it would be an arbitrary and unreasonable rule. Taking the language of the statute, under which the indictment in *U. S.* v. *Potter, supra,* was drawn, as an illustration, it would be difficult to explain how the accused would be put to disadvantage or left in doubt in making his preparation to meet the accusation, because he was charged with "cutting or causing to be cut," and was uncertain whether the State would offer testimony tending to prove the commission of the one act or the other, when all the authorities concur in stating the rule to be that if the usual precedent had been followed, and the language employed in the indictment had been "cutting *and* causing to be cut," the prosecution could

have sustained the charge by proof of either act, thus leaving the defendant in equal uncertainty. 10 Am. & Eng. Enc , *Indictment*, 16 (h); *State* v. *Keeter*, 80 N. C., 472; Bishop, Stat. Crimes, § 244; *State* v. *Ellis*, 4 Mo., 475; *State* v. *Locklear*, Busb., 205; Wharton, Cr. Pl. & Pr., § 252.

But if we admit (as many authorities tend to prove) that where no statute affecting procedure has been passed to modify it, it is a rule of law that charges of the acts representing the different stages of the same transaction must be coupled by the word "and" in the indictment, still giving a fair interpretation to our curative act (*The Code*, § 1183), we think that the charge is expressed " in a plain, intelligible and explicit manner" (certainly as definitely as in the old prescribed precedent), that sufficient matter appears in the indictment to enable the Court to proceed to judgment, and, therefore that it should " not be quashed." *State* v. *Rhinehart*, 78 N. C., 58; *State* v. *Walker*, 87 N. C., 541; *State* v. *Lane*, 4 Ired., 113; *State* v. *Wilson*, 67 N. C., 456; *State* v. *Sprinkle*, 65 N. C., 463; *State* v. *Parker*, *Ibid*, 453. The defendant moved in arrest of judgment, because the indictment failed to specify upon what particular person he practiced medicine or surgery. The governing principle to be applied in passing upon the sufficiency of the averments in an indictment, is that the nature of the offence charged should appear so explicitly and plainly from its terms as to leave the defendant in no well founded doubt in preparing to meet the accusation. The indictment is framed under section 5, chapter 181, Laws of 1889. It is not essential that the prosecution should show, in order to convict under the statute, that the defendant ever prescribed for or practiced upon a particular patient, but it would be sufficient to prove that he held himself out to the public as a physician or surgeon, and invited or solicited professional employment from any who might need or desire such service.

If the defendant merely held himself out to the public as a physician or surgeon, he was guilty of the offence created by the statute. It would be unreasonable, therefore, to declare that the indictment, upon its face, is defective, because the charge is not more specific in describing the manner of practicing or attemping to practice. The precedents found in the books and used in prosecutions, under similar statutes, tend to sustain our position. Bishop's Forms, §§ 996 to 1000. The offence seems to be described with sufficient certainty in the language of the law, and no extrinsic proof is needed to bring it within its terms. This indictment is not analagous to the charge of disposing of mortgaged property, drawn under the Acts of 1873–'4 and 1874–'5, because in that case, as the Court declared, the words " dispose of in their literal sense were worse than a drag-net, and, taken with reference to the subject at hand, they might mean disposition by removing from the county, concealing, selling or by the actual consumption of such as were fit for food." *State* v. *Pickens,* 79 N. C., 652. Besides, there were certain extrinsic facts that it was essential to aver and prove. *State* v. *Barnes,* 80 N. C., 376. The offence is charged in the indictment in such terms that the defendant cannot be guilty of it without being brought within the express meaning of the statute, and this has been declared a test of its sufficiency in such cases. Young's Case, 15 Grattan (Va.), 664. It has been stated, as an established rule, that where an offence is prohibited in general terms in one section of the statute, and in another and entirely distinct section the acts of which the offence consists are specified, it is not necessary that anything but the general description should be set out in the indictment. *State* v. *Casey,* 45 Me., 435.

Where the very nature of a charge is such as to involve the idea of attempting to engage in a business, or unlawfully engaging in a business prohibited by statute, there is not the same reason for specifying the act, as where the allegation is, and the specific proof must be that the accused was guilty

of a single unlawful act, which would constitute a distinct offence as often as the act might be repeated. Bishop Stat. Crimes, §1037; *People* v. *Adams*, 17 Wend., 475. Thus, if the defendant were indicted for retailing, every distinct sale to the same or different persons would constitute a criminal offence, while separate indictments would not lie for every attempt to practice, or every separate solicitation of practice, within the statutory period. *State* v. *Bryan*, 98 N. C., 644.

It is too late to question the constitutional validity of a statute enacted in the exercise of the police power of a State, and purporting to protect the public against imposition and injury to health by requiring that persons who engage in the practice of medicine shall submit to an examination conducted by learned physicians, and shall produce a license from such competent masters of the medical science. Cooley Const. Lim., 596 (Star page.)

The proviso to section 5 (under which the bill is drawn) declares that "this act shall not apply to women pursuing the avocation of midwife, nor to reputable physicians or surgeons resident in a neighboring State and coming into the State for consultation with a registered physician of this State." The comity thus extended to reputable physicians, who have probably been subjected to some suitable test of competency (under the laws of the States in which they reside) before being permitted to practice, is widely different in its nature from the attempt to grant the exclusive privileges coming within the inhibition of Art. 1, § 7, Constitution of North Carolina. The proviso to the section is merely an exception to a restrictive or prohibitory law, inserted through courtesy to sister States upon the assumption that they have provided amply for the protection of the health of their citizens by legislation similar to ours, and with the further safeguard that our own registered physicians alone have the power to extend this courtesy to non-residents, upon whose opinions they may place a high estimate.

At the request of the Solicitor the Court charged the jury that if "the defendant attended any sick person, examined the condition of such sick person and prescribed the medicine of his own make for the sick person, and held himself out to the public as competent to prescribe the medicine of his own make, in those cases wherein it was the proper remedy in his opinion, and did prescribe it in such cases, the defendant had violated the criminal law," and should be found guilty. A witness testified that the defendant examined his throat, diagnosed the disease, declaring it to be catarrh, said he would cure the witness for ten dollars, and prescribed and furnished some pills that he had been selling as a proprietary medicine. Another witness testified that the defendant stated, when on trial before the Justice of the Peace, that he was a practicing physician in Washington County. Mr. Armistead testified that the defendant told him that he had a right to practice medicine and intended to do it; that he did not understand the defendant to say that he used only his own proprietary medicine. Dr. Murray visited Mrs. Mathews and found the defendant in attendance upon her, when he said that he had as much right to practice medicine as Dr. Murray, a registered physician, had. He had medicine in the sickroom and said he was giving it to the patient, who was having fits—Indian hemp and pulsatilla. The defendant, when examined in his own behalf, said that he had been called to see plenty of sick people, and "after examining them," if it was appropriate, prescribed his medicine.

We think that the instruction embodied the law applicable to the testimony bearing upon the charge. An unlicensed person, claiming to be a physician and holding himself out to the world as such, cannot, after examining a patient who has asked his services, diagnosing the disease, fixing an amount or price for which he will cure the patient and giving him a prescription, evade the law by proving that the medicine administered was a proprietary remedy

prepared and sold by him. If such were the law, a pre-
tender, with a half dozen or more medicines of his own
manufacture, and marked as nostrums suitable for certain
classes of diseases, might declare himself a graduate in
medicine and capable of curing diseases of all kinds, after
examining the patient and determining which one of his
ready-made preparations would prove the panacea to meet
the particular symptoms, might administer it and thus defeat
and evade this salutary law passed for the purpose of pre-
venting quacks from masquerading as trained medical men.
A vendor of patent medicines who does not pretend to diag-
nose disease and determine which of his remedies is proper
in a particular case, is not a violator of this statute; but
that avocation cannot be used to shelter one who is practicing
medicine and holding himself out as a physician, and who
varies his prescriptions to meet symptoms discovered on his
own examination.

We think that the evidence warranted the Judge in giving
the instructions asked by the Solicitor, and in adding that
if " the defendant had practiced in the county (Washington)
within two years without first having registered and obtained
a certificate, that is, prescribed for sick persons, or held him-
self out to the public as a physician or surgeon, he was
guilty." *State* v. *Bryan, supra.*

Defendant's counsel, in his brief, says, after enumerating
the exceptions to which we have adverted, that all others
are abandoned. He does not insist upon the motion to
quash for want of the negative averments that the defendant
was not a reputable physician, etc., and his abandonment
must be considered as complete a waiver as an agreement to
cure the defect, if any, except by amendment, would have
been.

SHEPHERD, J. (dissenting): Fully sympathizing as I do
in all reasonable efforts to free the administration of the crim-

inal law from the refinements of needless technicalities, I am nevertheless unable to concur with my brethren in sustaining the indictment in the present case. The defendant is indicted under section 5, chapter 181 of the Acts of 1889, which makes it a criminal offence for any person to " practice, or attempt to practice, medicine or surgery in this State," without having first registered, and in other respects complied with the law. It thus appears that the statute has expressly created two offences, viz., the commission of the inhibited act, and the attempt to commit it. These offences are so distinct that in the latter a greater particularity is required in the indictment, this Court having conclusively settled, in *State* v. *Colvin,* 90 N. C., 717, that in such indictments some overt act of the accused, which, in the ordinary course of things, would result in the commission of the particular offence, must be alleged and proved.

The offences being distinct, it seems quite clear to me that they cannot be charged with the alternative, and I am unable to find a single authority in which such an indictment has ever been sustained. In addition to the elementary works on the criminal law, we have an express decision of this Court that such a bill is fatally defective. *State* v. *Harper,* 64 N. C., 130. Even the very statute (*The Code,* § 1183) which does away with formal objections, etc., provides that the offence shall be set forth " in a plain, intelligible and explicit manner;" and how can it be said that this requirement is complied with by charging the defendant, as Mr. Archbold puts it (Crim. Practice & Pl., 278), " with having done so or so."

It is true that there are some authorities which hold that the use of the disjunctive is not fatal when the acts represent successive stages of one criminal transaction, as when the charge is " cutting or causing to be cut," but it must be noted that these cases relate only to one distinct offence, and

rest upon the idea that one part is used only as explaining or illustrating the other.

Mr. Wharton (Crim. Law, § 294) shows that the weight of authority is even against this practice, for he says that if the charge is " in the disjunctive, as that he murdered *or* caused to be murdered, forged *or* caused to be forged, burned *or* caused to be burned, sold spirituous *or* intoxicating liquors \* \* \* \* it is bad for uncertainty." After citing some few American decisions to the contrary, he remarks that " the principle in those cases seems to be that ' or ' is only fatal when it renders the statement of the offence uncertain, and not so when one term is used only as explanatory of or illustrating the other." It is very difficult to understand how the mere charge that one attempted to do an act can explain or illustrate that act when already completed.

I think that we should adhere to the well settled rule that alternative charges of distinct offences ought not to be sustained.

*Per curiam.*                              No error.