# TERRITORY *v.* KIM UNG PIL.

## No. 1407.

### ERROR TO CIRCUIT COURT FIRST CIRCUIT.
### HON. J. J. BANKS, JUDGE.

ARGUED NOVEMBER 8, 1922.                    DECIDED JANUARY 24, 1923.

### PETERS, C. J., PERRY AND LINDSAY, JJ.

INDICTMENTS AND INFORMATIONS—*statement of offense—disjunctive allegations.*

The use of the disjunctive "or" in an indictment for robbery, in charging that the taking was "from the person *or* from the custody and in the presence" of the person robbed, does not render the indictment bad.

SAME.

When the two alternative words or expressions are synonymous, the use of the disjunctive "or" does not vitiate the indictment.

ROBBERY—*elements of offense—taking from the person or presence.*

In legal contemplation a taking of property *from the custody and in the presence* of the person robbed is a taking *from the person.*

ROBBERY—*indictment—allegation of intent to steal.*

An indictment for robbery which alleges that the taking was "without the consent and against the will" of the person robbed and that the defendant "feloniously and by force and violence did rob, steal, take and carry away" the property, sufficiently charges a taking with intent to steal.

SAME—*allegation of intent to overcome resistance.*

An indictment for robbery which alleges that the defendant was armed with a revolver "with intent, if resisted, to kill or maim or wound or inflict other corporal injury upon" the person robbed and that, being so armed, the defendant "did make an assault and the said" defendant "in bodily fear and danger of his life then and there did put," sufficiently charges that the force was used to put in fear and to overcome resistance if necessary.

OPINION OF THE COURT BY PERRY, J.
(Peters, C. J., dissenting.)

The plaintiff in error was tried, convicted and sen-

tenced under an indictment reading as follows, omitting the formal parts: "The grand jury of the first judicial circuit of the Territory of Hawaii do present that Kim Ung Pil at the City and County of Honolulu, Territory of Hawaii, and within the jurisdiction of this honorable court, on the 19th day of July, 1921, with force and arms, in and upon one A. Oshira, then and there being, he, the said Kim Ung Pil, being then and there armed with a dangerous weapon, to wit, a revolver, with intent in him, the said Kim Ung Pil, if resisted, to kill or maim or wound or inflict other severe corporal injury upon the said A. Oshira, did make an assault and the said A. Oshira, in bodily fear and danger of his life, then and there did put, and certain moneys, to wit, One Hundred and Fifty-one Dollars ($151.), lawful money of the United States of America, a particular description of which is to the grand jurors unknown, of the moneys, chattels and property of the said A. Oshira, from the person or from the custody and in the presence and without the consent and against the will of the said A. Oshira, then and there feloniously and by force and violence did rob, steal, take and carry away, and did then and there and thereby commit the crime of robbery in the first degree." The plaintiff in error, hereinafter called the defendant, brings the case to this court upon a writ of error setting forth a large number of assignments of error which, however, in varying words and forms contain three main assignments which may be briefly stated as follows: (1) that the indictment contains an alternative allegation and is for that reason defective and for the same reason sets forth no offense; (2) that it is not alleged in the indictment that the taking was with intent to steal; (3) that the indictment does not allege that the force was used or the fear excited to prevent or overcome resistance or to prevent or hinder the escape of the party robbed or to

prevent the conveying away, securing or guarding the subject of the larceny from being taken or to induce the party robbed to surrender the same or to prevent detection of the crime.

Counsel's main reliance would seem to be placed upon the fact that one of the allegations is in the alternative. The allegation thus attacked is that the taking was "from the person or from the custody and in the presence" of the party robbed.

Section 3791D, R. L., as enacted by Section 1 of Act 215, Session Laws of 1915, provides that "In an indictment for an offense which is constituted of one or more of several acts or which may be committed by one or more of several means or with one or more of several intents or which may produce one or more of several results, two or more of such acts, means, intents or results may be charged in the alternative." The prosecution justifies the allegation under consideration under the provision of the section just quoted and the defendant contends that the statute is unconstitutional. Whether or not the allegation in question is authorized by this section and whether or not, if it is so authorized, the section is unconstitutional, we need not consider—for upon another ground the allegation can and should be sustained. The argument of the defendant is, in brief, that an alternative or disjunctive allegation alleges nothing; that it is a mere statement of an uncertainty; that it does not inform the defendant of what it is that he is charged with; that it does not inform the defendant of the specifications of the charge against him; that an indictment "should descend to particulars;" and that the defendant is, under Article VI of the amendments to the Constitution, entitled "to be informed of the nature and cause of the accusation" against him. In connection with this argument, the defendant also refers to Article V of the amendments to the Constitution providing that "no

person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury," contending that this latter provision means and presupposes an indictment which shall inform the accused of the nature and cause of the accusation. In no other respect is it contended by the defendant that Article V of the amendments to the Constitution is violated by this indictment; nor has it been suggested by any one in the argument or the consideration of this case that Article V has been violated except by the alleged failure of the indictment to inform the accused of the nature and the cause of the accusation against him.

The rule relied upon by the defendant concerning the use of the disjunctive "or" in indictments has been often and variously stated in the books. Its general purport is that "an indictment or criminal information which charges the person accused, in the disjunctive, with being guilty of one or of another of several offenses, would be destitute of the necessary certainty and would be wholly insufficient." *United States* v. *Clarke,* 20 Wall. 92 (22 L. ed. 320). The reasons usually given for the rule are that such an indictment would not give the accused definite notice of the offense charged and thus enable him to defend himself and that neither a conviction nor an acquittal could be pleaded in bar to subsequent prosecution for one of the several offenses. *Ib.* The cases to this effect are undoubtedly numerous. But it has never been held that the mere presence of the disjunctive "or" in an indictment vitiates the indictment or that, in other words, any and every disjunctive allegation must necessarily be bad. Some disjunctive allegations are bad; others are not. *Henderson* v. *State,* 113 Ga. 1148. The exception, if it may be called that, is as well established as is the rule itself, that when the disjunctive merely connects two synonymous words or expressions, the allegation does not vitiate the indictment;

and also that if the disjunctive is used with reference to immaterial matter the indictment is not injuriously affected.

"An indictment or information must not charge a party disjunctively or alternatively in such manner as to leave it uncertain what is relied on as the accusation against him; but where terms laid in the alternative are synonymous, the indictment is good." 22 Cyc. 296, 297.

"The reason for discarding the disjunctive and substituting the conjunctive, was, that using the alternative charge left the defendant in such doubt as to the nature of the offense which he was held to answer, that he could not intelligently prepare his defense * * *.

"But upon the maxim, *cessante ratione cessat et ipsa lex,* the better rule seems now to be that 'or' is only fatal when the use of it renders the statement of the offense uncertain, and not so when one term is used only as explaining or illustrating the other. * * * Where it is manifest that the defendant cannot be embarrassed by uncertainty in preparing his defense by reason of the use of the disjunctive instead of the conjunctive, if the form ordinarily used in drawing the indictment should be treated as an established precedent essential in all cases, it would be an arbitrary and unreasonable rule." *State* v. *Van Doran,* 109 N. C. 864, 866.

Under an indictment for murder charging that the deceased was struck "with a stone or an iron hammer" it was held that "whether the particular instrument used was a stone or an iron hammer was not material" and was not "necessary to enable the defendant to prepare for his defense" and was not "necessary in the event of a plea of former acquittal or conviction." *State* v. *Lark,* 42 S. E. (S. C.) 175, 176.

In *Slover* v. *Territory,* 5 Okl. 506, 510, a case largely relied upon by the defendant, it was said that "matters *that are essential* to give information of the nature of the accusation and *essential* to a description of the offense, cannot be omitted" and that "such essential matters" can-

not "be stated in the disjunctive;" and the court conceded "that this constitutional provision," the same as that under consideration in the case at bar, "was not intended to prevent the legislature from dispensing with matters of form only in the description of an offense, nor with any degree of particularity of specification in the description which did not give the defendant any substantial and reliable information of the particular offense intended to be proved" and refused to say that "it would not be competent for the legislature to alter in any respect the common law form of charging an offense."

If the disjunctive and all that follows it can be rejected as surplusage, then the alternative averment will not be ground for quashing the indictment. *Henderson* v. *State, supra.*

It has been held, for example, that an indictment is not defective for alleging the stealing of a "bay or brown" animal, upon the theory that "bay" and "brown" mean the same thing (*Henderson* v. *State, supra*); also that an indictment is not defective for charging that the killing was done with "a pistol or revolver" upon the ground that "a revolver is a pistol." *State* v. *Newsom*, 13 W. Va. 859, 862.

At common law the offense of robbery consisted of a stealing, accompanied by the elements of force or fear, "from the person" of the party robbed; and yet it has been repeatedly held that where under an indictment for robbery, whether under the common law or under statutes rendering punishable the crime of "robbery" without defining it—in which latter case the common law definition of the offense was always intended and used—the evidence established a stealing (accompanied by the other necessary ingredients) from the custody and in the presence of the party robbed, that was sufficient proof of a taking *from the person.* In other words, it has been repeatedly

held and is well established that at common law, in relation to the offense of robbery, a taking from the custody and in the presence was the equivalent of a taking from the person.

"Since robbery is an offense as well against the person as the property, the taking must be, in the language of the law, from the person. But the person may be deemed to protect all things belonging to the individual, within a distance, not easily defined, over which the influence of the presence extends. * * * The better expression is, that a taking in the presence of an individual (of course, there being a putting in fear) is to be deemed a taking from his person." 2 Bishop Cr. L., Sec. 1117. See also Sec. 1108.

"Open and violent larceny from the person, or robbery, the rapina of the civilians, is the felonious and forcible taking from the person of another of goods or money to any value, by violence or putting him in fear. * * * If the thief, having once taken a purse, returns it, still it is a robbery; and so it is whether the taking be strictly from the person of another, or in his presence only." 4 Wendell's Blackstone, page 242.

In *Clements* v. *State,* 84 Ga. 660, 662, 663, the trial court instructed the jury that "in order to convict these defendants, it must appear that the goods alleged to have been taken were taken from the person of the owner" and that the property of the owner "is, in contemplation of law, upon the person of the owner, which is, at the time of taking, in the immediate presence of the owner, or is so near at hand, or stored in such position, that at the time of taking, it is under the immediate personal protection of the owner." On appeal this instruction was sustained, the appellate court adding: "It is not necessary in a case of robbery to prove that the property was actually taken from the person of the owner, but it is sufficient if it is taken in his presence."

"It thus appears that the well settled legal meaning of the words" *from the person,* in a statute or indictment

charging robbery "at the time they were taken from the common law and carried into the statute, were exactly as comprehensive as that put upon them by the court below." *Turner* v. *State*, 1 Ohio St. 422, 426. In that case the trial court had instructed the jury that it was sufficient, in order to consummate the offense of robbery or a taking from the person, if the property was in the presence and under the immediate control of the party robbed.

In *State* v. *Lawler*, 130 Mo. 366, 371, the court after reviewing the common law definitions of robbery as given by Hale, Hawkins and East said: "It will be observed that the definition as given by East is more full than those given by the other authors, in that the words 'or in his presence,' and 'against his will' are used alone by East and not by the others, in defining the crime. The words "in his presence' were added to the words 'from his person' by judicial construction, as substitutionary of, and tantamount in meaning to 'from his person,' and this in order to prevent an evasion of the law."

To the same effect are 34 Cyc. 1797; 24 A. & E. Ency. L. 1002, 1003; 3 Bouvier 2971; *Hill* v. *State*, 40 So. (Ala.) 654; *Crews* v. *State*, 3 Cold. (Tenn.) 350, 353; *Croker* v. *State*, 47 Ala. 53, 57; *Jackson* v. *State*, 114 Ga. 826, 827; *State* v. *Kennedy*, 154 Mo. 268, 284; *State* v. *Corrigan*, 24 Conn. 285, 288; *Hill* v. *State*, 42 Neb. 503, 527; *Hammond* v. *State*, 43 Tenn. 129, 133, 134; *Clary* v. *State*, 33 Ark. 561, 563; and *Houston* v. *Com.* 87 Va. 257, 264.

The two expressions were and are synonymous. If the charge is of a taking from the custody and in the presence, proof of a taking from the person will suffice; and if the charge is of a taking from the person, proof of a taking from the custody and in the presence will likewise suffice. The words in the indictment under consideration "or from the custody and in the presence" may be regarded as surplusage and could be omitted without in any wise affect-

ing the conduct of the trial or the admissibility of evidence or the correctness of the verdict. Without the words thus eliminated, the same evidence adduced at the trial will suffice to sustain a conviction upon the remaining words. The offense of a taking from the person is the same offense as that of a taking from the custody and in the presence. They are not separate and distinct offenses. The words "or from the custody and in the presence" were added in our statute from abundance of caution. They did not alter the common law definition of robbery or add anything to the well known expression "from the person." The essence of our statute is that it prohibits a taking from the person and that a taking from the custody and in the presence means the same thing. Its essence is that a taking from the custody and in the presence, irrespective of whether the property taken was or was not at the time of the taking on or attached to the body of the party robbed, is unlawful and punishable.

As was well stated in at least one case, "When the reason for the law ceases the law itself no longer applies." *State* v. *Van Doran, supra.* The reason of the general rule contended for by the defendant is that the defendant may not be misled or, in other words, may not be left in doubt as to what the charge is that he is required to meet. What room for doubt was there left by the indictment in this case? It informed the defendant that he was accused of making an assault in the manner described upon one Oshira and that with the aid of that assault he stole $151. from the party robbed. He was indeed told by the indictment that at the time of the taking the money was either on the person of the party robbed or in his custody and in his presence. In legal contemplation the two constitute one and the same thing. In either event the charge was that he took the property from the person. What preparation is there which the defendant could have made if

the indictment had simply charged that the taking was from the person or had simply charged that it was from the custody and in the presence of the party robbed or had charged that it was from the person *and* in the presence and custody, which he could not make to meet the present indictment? We cannot imagine any substantial and satisfactory answer that can be made to this question. As well say that the constitutional provision as to his being informed of the nature and cause of the accusation would not have been satisfied by an indictment which charged that the taking was either from the left pocket or from the right pocket of the coat of the party robbed or which charged that the taking was either from his left hand or from his right hand or which charged that the taking was from a table upon which his hand rested or from the floor immediately adjacent to one of his feet. In a highly technical sense, perhaps, it could be said that the accused would be left in some doubt as to what the charge against him was, but in no practical, common-sense, just way of viewing the matter could it properly be said, consistently with the ordinary every-day use of the English language, that he was left in any doubt or that he was prejudiced in the preparation of his defense. The constitutional provisions involved were, it is true, made primarily for the protection of innocent persons accused of crime, but like other written laws they must receive a reasonable interpretation which shall not wholly ignore the rights of the community in which the accused person lives,—the rights, in other words, of other innocent persons who are entitled to live in the same community in peace and safety.

Article V of the amendments to the Constitution does not require adherence to the common law forms of indictment in anything other than matters of substance. With respect to mere matters of choice of words or of forms or

with respect to immaterial things, a departure from the common law forms is not inhibited. *Brown* v. *People,* 29 Mich. 231, 233-236.

In *Slover* v. *Territory,* 5 Okl. 506, 510, the court held that the indictment which charged a taking (in a robbery case) "from the person or immediate presence of" the party robbed "can mean nothing" and did "not apprise the defendant against what he is to defend himself," that "the allegations of the essentials of the offense" were "in the disjunctive" and that the indictment was "bad for uncertainty." With this we cannot agree, for the reasons above stated. It should be added that the opinion in that case does not upon its face disclose that the synonymous character of the two expressions used in the indictment was considered by the Oklahoma court or was called to its attention.

Another assignment is that it is not alleged in the indictment that the taking was with intent to steal. It is alleged that the taking was "without the consent and against the will" of the party robbed and that the defendant "feloniously and by force and violence did rob, steal, take and carry away" the money in question. Our statutory definition of robbery is that it consists of "the stealing of a thing from the person of another or from his custody in his presence, by force or putting him in fear." The charge as stated in the indictment follows the wording of the statute. The language used sufficiently charges and imports a taking with intent to steal. The word "steal" and the word "feloniously" necessarily carry this meaning. "The word 'feloniously' used in the body of the indictment, in a legal sense, means, 'done with intent to commit crime.' Its use in an indictment has uniformly been held to be a sufficient averment of the intent necessary to constitute the crime." *State* v. *Switzer,* 38 Nev. 108, 109. "It is urged that there is a failure to set forth facts

showing intent to rob, steal and purloin. * * * The words that defendants did wilfully, unlawfully and feloniously rob are sufficient." *Vane* v. *United States*, 254 Fed. 32, 34. See also *Felton* v. *United States*, 96 U. S. 699, 702.

The third assignment above noted likewise cannot be sustained. R. L., Sec. 3905, provides that "in order to constitute robbery, the force must be used, or the fear excited or taken advantage of, to prevent or overcome resistance, or to prevent or hinder the escape of the party robbed, or to prevent the conveying away, securing or guarding the subject of the larceny from being taken, or to induce the party robbed to surrender the same, or to prevent detection of the crime." The indictment charges that the defendant was armed with a revolver "with intent in him, the said" defendant, "if resisted, to kill or maim or wound or inflict other severe corporal injury upon" the party robbed and that being so armed he "did make an assault and the said" defendant "in bodily fear and danger of his life then and there did put." This is a sufficient charge that the force was used to put in fear and to overcome resistance if necessary.

All the assignments of error have been considered. The judgment appealed from is affirmed.

*C. S. Davis* (*R. J. O'Brien* and *Brown, Cristy & Davis* on the brief) for plaintiff in error.

*H. E. Stafford,* First Deputy City and County Attorney (*W. H. Heen,* City and County Attorney, with him on the brief), for the Territory.

### DISSENTING OPINION OF PETERS, C. J.

I respectfully dissent. I refrain, however, from expressing my reasons as my conclusions involve questions of importance which the majority have found unnecessary to determine and which if, and when, decided should be open to discussion by all the members of the court.