STATE OF FLORIDA ex rel. FRED H. DAVIS, Attorney General, and K. R. MURRELL, *Relators*, v. WALTER W. ROSE, THOMAS C. HAMMOND and WILLIAM R. RANNIE, as the Florida Real Estate Commission, *Respondents*.

Division A.

Opinion filed May 9, 1929.

712

714

*Fred H. Davis,* Attorney General; *Will O. Murrell* and *Sam E. Murrell,* for Relator;

*W. H. Poe* and *L. E. Broome,* for Respondents.

ELLIS, J.—Upon information lodged in this Court by the Attorney General in behalf of the State and K. R. Murrell, a citizen, a writ of *quo warranto* was issued directed to Rose, Hammond and Rannie to answer by what warrant or authority they claim to have or exercise the office and powers of Florida Real Estate Commissioners.

The respondents demurred to the information.

The writ charges that it appears from the petition (information) that the respondents usurped and assumed to exercise the office under "Chapter 11336, Laws of Florida, Extraordinary Session 1925, and also House Bill Number 469, Laws of Florida, 1927, which said chapter and laws are averred to be unconstitutional and void for reasons specified in said petition." House Bill Number 469 is Chapter 12223, Laws of Florida, 1927.

Something is mentioned in the information about Murrell being a real estate broker and his business coming within the provisions of the statute attacked, and being required to pay ten dollars on account of charges and expenses.

Among other things, the information alleges that the

respondents, acting under authority of the two statutes, have accumulated and now have on hand approximately Twenty Thousand Dollars which should be paid into the State Treasury, to be disposed of as the law now, or may hereafter, provide. The information seeks the removal of the respondents from office, an accounting of the monies in their possession, and the payment of the same into the State Treasury.

Aside from the double purpose of this proceeding, which is an anomaly, it is not clear why if the chancery powers of the court may be exercised to require an accounting from the respondents it should be limited to the money they now have on hand.

Joining K. R. Murrell as a so-styled relator, or as one in whose behalf the information was filed, was unnecessary. So were the allegations as to his occupation and the effect upon it which the enforcement of the provisions of the statute would have. This Court has said heretofore that the authority to bring the information, as well as the responsibility for it, is the Attorney General's. Mr. Murrell's grievance as citizen or real estate broker adds nothing to such authority and takes nothing from the responsibility. See State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 So. R. 929.

In that case the Court treated the information as brought in the name of the State upon the relation of the Attorney General, though in a somewhat informal manner, "considering the mention of the so-styled relators as mere surplusage and in no way affecting the validity of the information, nor in any way affecting the absolute control of the case by the Attorney General in his official capacity," who, the Court said, was responsible for filing the information, for its form, nature, and contents, including all its allegations, and that such responsibility could not be delegated by him to any person, or even cast upon this Court.

There is no brief here from the Attorney General's office to aid this Court in determining the many questions sought to be presented involving the constitutionality of the statutes under the authority of which the respondents are serving as the Florida Real Estate Commission.

The brief filed in behalf of the ''Relators'' discusses at length the many provisions of the Constitution against which the information alleges the statutes offend. We should have liked to have had the benefit of the Attorney General's views upon at least a few of such questions. The brief of able counsel for the relators, while helpful, might have been less general and more specific in its attack upon the statutes. It is a rule, very generally observed at the bar and invariably followed by this Court, that one who asserts the unconstitutionality of a statute should show beyond all reasonable doubt that the statute inevitably conflicts with some designated provision of the Constitution. See Neisel v. Moran, 80 Fla. 98, 85 So. R. 346; Board Com'rs of Everglades Drainage District v. Forbes Pioneer Boat Line, 80 Fla. 252, 86 So. R. 199.

The information attacks two statutes. The brief discusses several. The two statutes which the information attacks are the same as those mentioned in the writ, Chap. 11336, Laws 1925, and Chap. 12223, Laws 1927, *supra*. The latter Act is entitled:

An Act to Define, Regulate and Register Real Estate Brokers and Real Estate Salesmen, and to Regulate their Relations with the Public; to Create the Florida Real Estate Commission, Provide for Its Organization, Succession and the Payment of its Expenses, Prescribing its Powers, Duties and Privileges, and the Supervisory Control by, and Ancillary Powers of, the Courts Touching the Subject; and to Prescribe Penalties for the Violation of the Act.

That Act was intended to be, and is, a complete revision of the subject of the former. Although it contains no repealing clause, the Act of 1925 is repealed by the Act of 1927 by implication. See Jernigan v. Holden, 34 Fla. 530, 16 So. R. 413; Sparkman v. State ex rel. Bank of Ybor City, 71 Fla. 210, 71 So. R. 34; Dees v. Smith, 55 Fla. 652, 46 So. R. 173.

If Chap. 12223, Laws of 1927, is valid it will be unnecessary to consider Chap. 11336, Laws of 1925. The subject dealt with by Chap. 12223, *supra,* is defined in the first few words of the title: "To Define, Regulate and Register Real Estate Brokers and Real Estate Salesmen, and to Regulate Their Relations with the Public." The subject of Chap. 11336, *supra,* was the same although expressed in fewer and different words.

The information attacks the Act of 1927, Chap. 12223, as being in violation of many of the provisions of both the Constitution of the United States and of the State of Florida. Thirty of the forty-eight sections of the Act are attacked as violating some specific section or provision of one or both Constitutions. Seven sections of the Declaration of Rights, Art. III, Sec. 16; Art. V, Secs. 17 and 35, Constitution of Florida; Art. I, Sec. 10; Art. IV, Sec. 2; Art. V of the Amendments, and the first section of the Fourteenth Amendment to the Constitution of the United States, are asserted to be violated by the Act under consideration. According to the information, the Legislature would seem to have taken no account of constitutional limitations, Federal or State, but upon the other hand to have ignored the organic law in no less than seventy-two instances in thirty of the forty-eight sections of the Act. It remains to be ascertained whether as a matter of fact or law either Constitution has been violated in a single provision of the Act, and if so whether such invalid portion may be eliminated and the valid portions of the Act retained.

It may be appropriate to observe that the subject with which the Act deals, viz: the business of buying or of selling real property upon commission for a percentage of the agreed price or a specific fee to be paid by the purchaser or seller, has not been attacked by the information as being without the scope or range of police regulation, but the brief assails the Act upon that ground. We may just as well dispose of that point here.

Bargaining or carrying on negotiations by an intermediary between a principal and a third person in the matter of business transactions, the acquisition of contractual rights affecting either personal or real property through an agent or broker, has long been considered a legitimate occupation in which any person may engage. Yet brokers of merchandise, stocks, or real estate are subject to the imposition of a tax upon the occupation and legislative regulation of it under the police power of the State.

A good statement of the nature and extent of the power was expressed by Mr. Chief Justice Redfield, in Thorpe v. The Rutland and Burlington Railroad Company, 27 Vt. 140, 62 Am. Dec. 625. He said: ''This police power of the State extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State. According to the maxim, *Sic utere tuo ut alienum non laedas,* which being of universal application, it must of course, be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others.'' ''There is also the general police power of the State, by which persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health and prosperity of the State, of the perfect right, in the Legislature to do which no question ever was, or, upon acknowledged general principles, ever can be made, so far

as natural persons are concerned.'' Private interests of every kind fall legitimately within the range of legislative control. There is no doubt that the Legislature may, if the public good is deemed to demand it, require property to be used by persons, as well as their business to be conducted, so as to prevent harm or injury to the public.

Rights of property are subject to such limitations as are demanded by the common welfare of society and it is within the range and scope of legislative action to declare what general regulations shall be deemed expedient. It is a power resting in the law-making body of a State, by virtue of the existence of government, and embraces all manner of wholesome and reasonable laws, either with or without penalties, not repugnant to the Constitution, as shall be judged to be for the good of the commonwealth. See Commonwealth v. Alger, 7 Cush. (Mass.) 53; Thurlow v. Massachusetts, 5 How. (U. S.) 504, 12 L. Ed. 256; Cooley on Constitutional Limitations, p. 583.

But the police power is not a power to pass unconstitutional laws. (It has never been true that all police regulations are legitimate which are reasonable, and that all are reasonable which the Legislature wills.) The test of the power is found in the effect the pursuit of the calling has upon the public weal rather than in the inherent nature of the calling. See Marymont v. Nevada State Banking Board, 33 Nev. 333, 111 Pac. R. 295, Ann. Cas. 1914 A 162, 32 L. R. A. (N. S.) 477; State v. Clausen, 65 Wash. 156, 117 Pac. R. 1101, 37 L. R. A. (N. S.) 466.

What regulations are proper and needful is primarily for legislative decision, but the court must finally determine however whether such regulations as may have been prescribed are so just and reasonable as to be in harmony with constitutional guaranties.

The language of Mr. Justice Marshall of Wisconsin in

the case of State v. Redmon, 134 Wis. 89, 114 N. W. R. 137, 126 A. S. R. 1003, 15 Ann. Cas. 408, 14 L. R. A. (N. S.) 229, forcefully and clearly sets forth the correct doctrine. It is as follows: ''It were better to always say that the police power extends to and permits legislation regulating reasonably matters appertaining to the public welfare, since anything beyond that must necessarily fall at the threshold of some constitutional defense. It is a great power, having more to do with the well-being of society than any other, yet one which if exercised autocratically would supersede some of the most cherished principles of constitutional freedom. It may be extended disastrously, or restrained and administered beneficially, according as the judiciary shall perform its constitutional functions.''

It is a power of governmental control adequate to meet changing social, economic and political conditions. It has been said to be a law of necessity, the power of self-protection on the part of the community.

Real estate is one of the two great divisions of property rights and bears as close a relation to public peace and welfare in our civilization as any species of private rights. The business of acting as intermediary between seller and purchaser in real estate transactions, the business of a real estate broker or salesman, is a lawful business, or calling, and anyone has a right under constitutional guaranties of liberty and pursuit of happiness to follow it, but it is nevertheless a business which may be conducted in such manner as to promote an undesirable state of local, economic excitement and unrest, which may easily result in a degree of public distress analogous to that produced by mismanagement of a banking institution.

There is involved in the relation of real estate broker and client a measure of trust analogous to that of an attorney at law to his client, or agent to his principal. The activities of

persons engaged in such business are largely directed toward developing the trading abilities of the parties concerned and creating a sales value as distinguished from a conservative or substantial value of the lands involved, which not infrequently results in expensive litigation injurious to all concerned. If motives for the enactment of laws regulating such business are to be sought there would seem to be sufficient to justify them. See Quinn v. Phipps, 93 Fla. 805, 113 So. R. 419; Bratton v. Chandler, 260 U. S. 110, 43 Sup. Ct. R. 43, 67 L. Ed. 157; Haas v. Greenwald, 196 Cal. 236, 237 Pac. R. 38; affirmed in 275 U. S. 490, 72 L. Ed. 389; Riley v. Chambers, 181 Cal. 589, 185 Pac. R. 855, 8 A. L. R. 418.

The possession and enjoyment of all rights are subject to the police power and property of every kind is held subject to general regulations which are necessary for the common good and general welfare, including contract rights, rights in things intangible as well as tangible. 6 R. C. L., p. 202; 4 Blackstone's Comm. 162; Cooley's Const. Limitations, 6 Ed., p. 704; Lindsay v. Mayor and City Council of Anniston, 104 Ala. 257, 16 So. R. 545, 53 A. S. R. 44, 27 L. R. A. 436; The Northwestern Fertilizer Co. v. Hyde Park, 70 Ill. 634.

The police power of a state is not confined to regulations looking to the preservation of life, health, good order and decency. Laws providing for the detection and prevention of imposition and fraud as a general proposition are free from constitutional objection: People v. Wagner. 86 Mich. 594, 49 N. W. R. 609, 13 L. R. A. 286, 24 Am. St. R. 141.

In Noble State Bank v. Haskell, 22 Oklahoma (text 84) 48, 97 Pac. R. (text 605) 590, the court quoted from State v. Richcreek, 167 Ind. 217, 77 N. E. R. 1085, 5 L. R. A. (N. S.) 874, 119 Am. St. R. 491, as follows: "The question

as to what regulations are proper and needful is primarily for legislative decision, yet, when the police power is used to regulate a business or occupation which in itself is lawful and useful to the community, the courts, if called upon, must determine finally whether such regulations as may have been prescribed are so far just and reasonable as to be in harmony with constitutional guaranties.''

The occupation of "Broker," including "Real Estate Broker" or persons engaged therein, is deemed a proper subject of regulation under the police power. 9 C. J. 512; 12 C. J. 924.

In Prettyman v. Florida Real Estate Commission, 92 Fla. 515, 109 So. R. 442, this court, having under consideration Chapter 11336 Laws 1925, *supra,* held that the act was a salutary police regulation affecting the public welfare.

The court has no power to inquire into the motive which prompted any act of the legislature, State v. Gleason, 12 Fla. 190.

In the exercise of its powers the legislature has great latitude. The wisdom, policy, or motives which prompt a legislative enactment, so far as they do not contravene some portion of the express or implied limitation upon legislative power found in the Constitution, are not subject to judicial control. See Stewart v. DeLand-Lake Helen Special Road & Bridge Dist., 71 Fla. 158, 71 So. R. 42; Seaboard Air Line Ry. v. Simon & Co., 56 Fla. 545, 47 So. R. 1001.

The law making power which is vested by the Constitution in the legislative branch of the government is subject only to such limitations as expressly or impliedly exist in the State and Federal Constitutions. No duly enacted statute should be declared by the court to be inoperative as being in conflict with organic law unless it clearly appears

beyond all reasonable doubt that under any rational view it is in positive conflict with constitutional law. See City of Jacksonville v. Bowden, 67 Fla. 181, 64 So. R. 769, Ann. Cas. 1915, D 99; Anderson v. Ocala, 67 Fla. 204, 64 So. R. 775; 52 L. R. A. (N. S.) 287; Jordan v. Duval Co., 68 Fla. 48, 66 So. R. 298.

All doubts as to the constitutionality of a statute are to be resolved in favor of the statute. See Dutton Phosphate Co., v. Priest, 67 Fla. 370, 65 So. R. 282.

The subject of Chapter 12223 Laws 1927, *supra*, is a proper one for police regulation.

The act is assailed upon the ground that it violates Sec. 16 of Art. III of the Constitution in that it embraces more than one subject. The inhibition prescribed by the section is against the enactment of a law which embraces more than one subject and matter properly connected therewith, and the section requires that the subject be briefly expressed in the title to the act.

The section forbids the legislature to embrace in one act two unconnected subjects. The amplification of the title does not vitiate the title nor render the act subject to the criticism that it embraces two subjects if the title merely mentions matters germane to the one subject. See Schiller v. State, 49 Fla. 25, 38 So. R. 706; State ex rel Moodie v. Bryan, *supra; Ex parte* Pricha, 70 Fla. 265 70 So. R. 406; Fine v. Moran, 74 Fla. 417, 77 So. R. 533.

If the title to an act fairly gives notice of the subject of the act so as reasonably to lead to an inquiry into the body thereof it is all that is necessary. The title need not be an index to the contents of the act. See State ex rel. Moodie v. Bryan, *supra;* Campbell v. Skinner Mfg. Co., 53 Fla. 632, 43 So. R. 874; Butler v. Perry, 67 Fla. 405, 66 So. R. 150; Hinely v. Wilson, 91 Fla. 815, 109 So. R. 468.

If the title to an act is not misleading it is sufficient.

See Seaboard Air Line Ry. Co. v. Simon, *supra;* State v. Bethea, 61 Fla. 60, 55 So. R. 550; *Ex parte* Gilleti, 70 Fla. 442, 70 So. R. 446; Van Pelt v. Hillard, 75 Fla. 792, 78 So. R. 693.

In the case of Smith v. Chase, 91 Fla. 1044, 109 So. R. 94, MR. JUSTICE WHITFIELD, speaking for the court, said, in substance, that the purpose of the first clause of Section 16 Article III of the State Constitution was to secure singleness of the subject of a legislative enactment and to require the title of an act to give a fair and reasonable notice to the legislature and the public of the provisions contained in the act; that the subject of an act may be as broad or as restrictive as the legislature may determine within controlling organic provisions; that the title may be broader than the subject of the act, but should not be less comprehensive. Having under consideration Chap. 10233 Laws of Florida 1925, relating to "Licensing, Regulating and Registering of and Defining the Terms Real Estate Brokers and Real Estate Salesmen," the court said the act expresses a number of matters all of which, including the offenses and penalties, may relate to the limited subject of licensing and regulating "Real Estate Brokers" and "Real Estate Salesmen."

A summary of Chap. 12223, *supra,* may be all that is necessary to be given here. It consists of forty-eight sections.

Section one contains nine paragraphs lettered "a" to "i" inclusive. It consists of definitions of terms used in the act. No attack is made on this section.

Section twenty-six consists of fourteen paragraphs, the first of which provides that the circuit court shall have power to revoke, or suspend, the registration of any broker or salesman "when it shall be satisfied that said broker or salesman" has violated or failed to observe any one of

the regulations enumerated in paragraphs lettered (a) to (m) inclusive.

It is alleged that this section violates Secs. 1, 3, 8, 12 and 17 of the Declaration of Rights and Art. III Sec. 16 of the Constitution of Florida, Art. I, Sec. 10, Art. IV Sec. 2, Art. XIV Sec. 1, and Fifth Amendment to the Constitution of the United States, because it is said it denies all men equality before the law and denies them certain inalienable rights, among which are "enjoying life and liberty, acquiring, possessing and protecting property and pursuing happiness and obtaining safety"; denies right of trial by jury; imposes cruel and unusual punishment; subjects a "person to be subject to be twice put in jeopardy for the same offense *and/or* compelled in a criminal case to be a witness against himself, *and/or* be deprived of life, liberty or property without due process of law *and/or* private property to be taken without just compensation" and impairs the obligation of contracts; denies citizens of each state the privileges and immunities of citizens of the several states; deprives a "person of life, liberty, or property without due process of law" "*and/or* denies to any person within its jurisdiction the equal protection of the law."

Section 2 creates the Florida Real Estate Commission, prescribes the number of its members, appointment by the governor, and qualifications from a stand point of years of experience as real estate brokers. No attack is made upon this section.

Section 3 relates to the terms of office of the members of the commission and its organization by the election of a chairman and a secretary. No attack is made upon this section.

Section 4 provides that any duties and powers of the commission, except the actual determination of informations and the passage and promulgation of rules, regula-

tions and by-laws, may be delegated by resolution to any member. This section is not attacked.

Section 5 empowers the commission to examine witnesses and administer oaths; to investigate persons doing a real estate business in the state; to ascertain if they are violating any provision of the act; to keep records and minutes of the business developing on them, and to foster the education of real estate brokers and salesmen concerning the ethical, legal and business principles which should govern their conduct. This section contains the spirit and purpose of the act and shows the legislative conception of the reasons commending themselves to it for the exercise of the regulatory police power. It is alleged that this section violates the provisions of Sec. 35 of Art. V of the Constitution against the establishment of other courts than specified in the Constitution.

The gist of a statute is its intent, and a material disregard of this is a violation of the substance of the enactment. The legislative intent therefore should be sought for and obtained and the statute be so construed as to make it valid and effective, if its language permits it. The act should be so construed as to advance and not defeat the object sought to be accomplished. See State v. Patterson, 67 Fla. 499, 65 So. R. 659; Willis v. Special Road & Bridge District, 73 Fla. 446, 74 So. R. 495; Nolan v. Moore, 81 Fla. 600, 88 So. R. 601.

This being true it follows that if there are ambiguous terms used in the act, or powers conferred, which when the words conveying them are literally interpreted would seem to be violative of constitutional limitations but when applied to the practical workings of the agencies supplied by the statute for the execution of its purpose they are found to vest no such powers nor violate any such limitations, such words or ambiguous terms should be so applied and inter-

preted in the light of the legislative intent as revealed in the act.

Section 6 empowers the commission to make by-laws for its own government and rules and regulations in the exercise of its powers; to decide questions of practice arising in the trial of informations, having regard to the provisions of the act and the regulations then in force. It provides that printed copies of the rules, or written copies under the seal of the commission, shall be *prima facie* evidence of their existence and requires the court to judicially notice such rules and regulations. This section is attacked because it is said that it violates the provisions of Sec. 1 of Art. III and Sec. 3 of the Declaration of Rights, and Sec. 35 of Art. V of the Constitution.

Sec. 7 secures to members of the commission the "same protection and immunities as are other judicial officers" and provides that the acts of its employees acting within the scope of their authority shall not be called in question except by the commission. It provides that the documents, papers, reports or evidence "shall not be subject to subpoena" without consent of the commission until the same shall have been published at a hearing held under the Act, "unless after notice to the commission and hearing the court shall determine that the commission or the accused will not be unreasonably hindered or embarrassed." This section is attacked as being violative of Sec. 11, Declaration of Rights.

Sec. 8 provides that executive offices shall be established and maintained at a place designated by the commission. The information charges this section to be in violation of Sec. 1, Art. XVI, providing that the seat of government shall be at the City of Tallahassee, in the County of Leon.

Secs. 9, 10, 11, 12 and 13 relate to compensation; necessary expenses; employment of clerks, inspectors and assistants, the seal which the commission shall adopt, and pro-

vides that copies of the proceedings and records of the commission and certificates signed by the chairman and under the commission seal relating to the facts concerning such proceedings shall be *prima facie* evidence thereof in the courts of the State. They also relate to the fund to be created and known as the Real Estate Commission Fund, which is to be kept by the State Treasurer, out of which the expenses of the administration of the Act are to be paid and providing for a contingent fund to be kept by the commission subject to its check, but such fund not to exceed One Thousand Dollars. It is also provided that expenses incurred by the commission shall be paid out of the Real Estate Commission Fund upon warrants of the Comptroller. There is no assault upon these sections.

Sec. 14 provides for the registration of all persons and corporations who under the provisions of the Act are deemed to be real estate brokers or real estate agents and to secure a registration certificate annually; prescribes the fee to be paid and prohibits the issuing of a real estate occupational license by the county judge or collector except on presentation of an "active registration certificate for that year." This section is said to violate both the State and Federal Constitutions.

The Attorney General charges in the information that the section violates Sec. 1 of the Declaration of Rights in that: "It is a law denying all men equality before the law *and/or* denying men certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property and pursuing happiness and obtaining safety"; that it also violates Sec. 17 of Article V of the Constitution which vests in the county judge the power to issue all licenses required by law to be issued in the county; that it also violates Sec. 35 of Art. V of the Constitution in that there is an attempt to

establish other courts than specified in the Constitution; that the section violates the Fifth Amendment to the Constitution of the United States because the said section "are laws depriving a person of life, liberty or property without due process of law"; and is also violative of Sec. 1 of the Fourteenth Amendment of the Federal Constitution because the section abridges "the privileges or immunities of citizens of the United States *and/or* are laws which deprive a person of life, liberty or property without due process of law *and/or* are laws denying the person within the jurisdiction of the State of Florida the equal protection of the laws."

Secs. 15 and 16 relate to non-active certificates and registration of members, officers and directors of partnerships and corporations. There is no attack made upon these sections.

Sec. 17 requires applications to be made for registration in the forms prescribed by the commission and requires all applicants to answer such questions and furnish such supporting evidence as the commission may require as to the applicant's qualifications. The Attorney General alleges that this section offends against Sec. 35 of Art. V of the State Constitution in that other courts than specified in the Constitution are attempted to be set up; that it offends against the 12th section of the Declaration of Rights in that it deprives "a person of life, liberty or property without due process of law"; and that it also offends against the Fifth and Fourteenth Amendments to the Federal Constitution.

Sec. 18 prescribes the qualifications which an applicant for registration shall possess. The Attorney General alleges that this section violates Sec. 2 of Article IV of the Constitution of the United States by denying to citizens of other States the privileges and immunities of the citizens of Flor-

ida, also violates the first section of the Fourteenth Amendment and the first section of the Declaration of Rights of the Florida Constitution.

Sec. 19 provides for approval by the commission of the application of a person for registration if he is deemed to be qualified. If he is not deemed to be qualified the commission is required to prepare an information and file the same, and the applicant to be notified and given fifteen days to answer it, and provision is made for a hearing in the manner provided thereafter in the Act. This section is deemed by the Attorney General to be violative of Sec. 3 of the Declaration of Rights securing the right of trial by jury, and that it also violates Sec. 35 of Art. V of the State Constitution.

Sec. 20 requires applicants for registration, who are not registered but whose application is approved, to appear in person at a place to be designated by the commission and answer questions touching their qualifications under the provisions of the Act. This section is also attacked by the information as being in violation of Sec. 12 of the Declaration of Rights as compelling a "person to be twice put in jeopardy *and/or* laws depriving a person of life, liberty and property without due process of law," and in violation of Sec. 24 of the Declaration of Rights "*and/or* laws impairing and denying rights retained by the people"; also as violating the first section of the Fourteenth Amendment and the "second section of the Fourth Article of the Constitution of the United States." The Court is not favored, however, with any suggestions as to the particular phase of the section which so offends.

Secs. 21, 22, 23, 24 and 25 are not attacked. They relate to renewals of certificates; signs which brokers are required to keep on or about the entrance to their offices; change of address and the registration of branch offices and fees to be

paid therefor when in the judgment of the commission a branch office is established.

Sec. 27 relates to informations. The section makes provision for the preparation and filing of an information when, from complaints received or upon investigation, it appears that the registration of an applicant ought to be denied, revoked or suspended.

The Attorney General deems this section to be in violation of Sec. 35 of Art. V and Sec. 16 of Art. III of the Florida Constitution, because he says it establishes courts other than the Constitution contemplates and "embraces more than one subject and matter properly connected therewith."

Sec. 28 requires that when an information is pending against one he shall be notified not less than twenty days before he shall be required to make answer thereto. The Attorney General attacks this section as being in violation of Sec. 16 of Art. III of the Constitution because he says it "embraces more than one subject and matter properly connected therewith."

Sec. 29 deals with a sort of procedure to be .observed by the commission when issues of fact are made up upon informations which have been filed and to which answers have been made. It provides for the examination of witnesses by an examiner appointed by the commission, vests the examiner with the power to administer oaths, examine witnesses,. rule on the admissibility of evidence subject to review by the "Court or Commission," give notices of hearings, report the testimony in writing and certify to all his acts. This section provides a method by which questions arising upon the qualification of an applicant for registration, or upon charges involving a revocation or suspension of a registrant's certificate, may be resolved by the commission in so far as it may act upon the evidence which may be adduced. This section is deemed to be void because it

offends, says the Attorney General, against Sec. 35, Art. V, Sec. 16, Art. III and Sec. 3 of the Declaration of Rights of the Florida Constitution.

Sec. 30 relates to evidence before the commission, or the courts, in proceedings where: the payment of a fee or commission may be involved; or whether a person is properly registered. The section provides that in the former case proof of the performance of the service shall be *prima facie* evidence that the service was performed in expectation of the payment of a fee, and in the latter case the burden of proof is cast upon the person whose registration is attacked. The section also provides that photostatic copies of papers and documents may be introduced in lieu of the originals, or type-written copies may be substituted after production of the originals to the examiner. It also provides for the production in evidence of the book of accounts of any person when shown to have been kept in the regular course of business, without calling the person who made the entries. It is also provided that the weight of such evidence is to be decided by the court or commission.

The information attacks this section as being violative of Sec. 12 of the Bill of Rights because it "compels a person in a criminal case to be a witness against himself *and/or* be deprived of life, liberty or property without due process of law"; that it also violates Sec. 16 of Art. III and Sec. 35 of Art. V of the Constitution.

Sec. 31 provides that where a person shall be an applicant for registration the commission shall hear and determine the case. When the person shall be a "registrant" the commission, upon issue of law joined or the report of the examiner shall be filed, may certify the record to the circuit court in which the "registrant" shall be registered for "further proceedings" according to law. It provides that the cause shall thereafter be prosecuted by the commis-

sion by its counsel on the relation of the original plaintiff. It provides that such cases shall have precedence over ordinary business of the court; shall be heard and decided at chambers and provides that the "registrant," called defendant, may appear in all cases in person or by counsel before the commission or the court. This section is assailed by the information because it is alleged that it violates Sec. 3 of the Declaration of Rights and the thirty-fifth section of Article V of the Constitution.

Sec. 32 prescribes a procedure by which causes involving the registration of an applicant or revocation of his certificate may be tried. It provides that the answer shall deny allegations of the information deemed to be untrue or may allege facts in avoidance. Allegations not denied are deemed to be true. If no answer is filed or if the facts averred in the answer are admitted the section provides that no proof shall be required and the court or commission may determine the cause on the pleadings. It also provides for setting the issues down for hearing, and liberality in allowing amendments by court or commission.

This section is assailed by the information as being violative of Art. III, Sec. 16 and Art. V, Sec. 35 of the Constitution.

Sec. 33 vests the court or commission with the power to cause an order to be entered in an "appropriate order book, or the chancery order book," denying, revoking or suspending the registration of the defendant or dismissing the information. It provides for referring the cause back to the examiner for additional proof. The order to contain a finding of fact; and no order denying an application shall be suspended by an appeal or order of a court or judge except on final entry of an order of *reversal*. It is provided that in *"denial proceedings"* "it shall not be an objection" that the commission "did not receive, discuss or decide any

matter in formal meeting, but it shall be sufficient if the order shall be signed or assented to in writing by a majority of the members.'' Findings of fact are required to be supported by a preponderance of the evidence and the burden of proof is upon the applicant to overcome the allegations of the information. It is also provided that an order revoking or suspending the registration of a broker shall automatically suspend the certificates of all his salesmen, and if a partnership or corporation then 'all the member officers and directors of such during the period of suspension until a new connection is secured. It also provides that when an order of revocation or suspension is entered the court shall enjoin the defendant from violating its terms. This section is alleged to be invalid because it is said to violate Sec. 3, Declaration of Rights, Art. 3, Sec. 16, and Art. V, Sec. 35 of the Constitution.

Sec. 34 relates to the issuing of subpoenas *duces tecum* by the commission when an investigation is being conducted, or by any clerk of a court or examiner appointed under the provisions of the Act, requiring the witnesses to appear before the commission, the examiner or any authorized representative of the commission at a time and place to be named in the writ and bring the books, documents, etc., required, and provides by whom the subpoenas may be served. It provides for punishment of witnesses who refuse to appear before the commission, or the examiner, or refuse to answer questions, in a kind of contempt proceeding before the circuit court. It also provides for payment of witness fees. The section contains a clause providing that a witness may not be required to attend a hearing outside of the county wherein he resides unless it be shown to a county or circuit judge that the witness is ''attempting to avoid appearing.''

This section is attacked because it is said to offend against

Sec. 11 of the Declaration of Rights because it is a law denying a person in a criminal prosecution to have the right of a speedy and public trial by an impartial jury in the county where the crime was committed *and/or* have compulsory process for the attendance of witnesses in his favor"; that it also violates Art. III, Sec. 16, and Art. V, Sec. 35, of the Constitution.

Sections 35, 36, 37, 38 and 39 provide for the payment by the commission to judges, clerks, sheriffs and other officers the fees which are provided by law for services they may perform upon request of the commission; the protection of witnesses as if they were engaged in judicial proceedings; the payment of witnesses secured by the defendant, who is required to advance such costs before he shall be entitled to subpoenas for them; for appeals to the Supreme Court from orders of the circuit court; the use on appeal of the original files in the cause; appeals to the circuit court from orders of the commission and the procedure in such appeals, and the records to be used. Provision is also made for review of circuit court judgments on certiorari under the rules of practice. These sections are assailed as violative of Art. III, Sec. 16 of the Constitution.

Sec. 40 makes provision for the restoration to a person of his rights as a broker when an order revoking or suspending his registration has been reversed and to the rights to which he is entitled if his application was denied and that order reversed. This section is attacked because it is said that it violates Secs. 12 and 24 of the Declaration of Rights of the Florida Constitution in "depriving a person of life, liberty or property without due process of law" and in "impairing or denying rights retained by the people"; that it also violates the Fourteenth Amendment to the Constitution of the United States.

Secs. 41 and 42 provide that the commission shall not be required to advance any fee or costs to any officer or witness, or to execute any bond in any proceeding, but provision is made for auditing and paying fees or costs for which the commission is liable. Provision is also made for payment of costs incurred by the defendant from funds of the commission. Sec. 42 makes provision for bills in equity to be filed by the commission against a broker or salesman who has violated any provision of the Act or regulation of the commission; for an "injunction" or writ of "mandamus" restraining them from further operating as a broker and provides for the issuing by the circuit court of any or all such writs; vests the court with power to punish for contempt any violation of any of its orders. These sections are attacked because it is said they violate Sec. 1 of the Declaration of Rights, Art. III, Sec. 16, of the State Constitution, and the Fifth and Fourteenth Amendments to the Constitution of the United States.

Sec. 43 relates to the service of notices that may be required by the Act providing that the same may be sent by registered mail, proof of the service by affidavit, and requiring such notice to contain sufficient information to put the person notified on inquiry and which will reasonably lead to a discovery of all facts necessary to the protection of the rights of the person notified. The information attacks this section as violating Art. III, Sec. 16 of the Constitution.

Sec. 44 provides that no contract for compensation for any service mentioned in sub-section b of Sec. 1 shall be valid unless the broker or salesman shall have complied with the terms of the Act in regard to registration and renewal of the certificate. The Attorney General assails this section as violative of Secs. 1, 3, 8, 12 and 17 of the Declaration of Rights and Art. III, Sec. 16, of the Constitution of the State of Florida, and Art I, Sec. 10, Art IV,

Sec. 2, the Fifth and Fourteenth Amendments to the Constitution of the United States.

Sec. 45 makes provision for the imposition of fines for the violation of any of the provisions of the Act and denounces any such violation as a misdemeanor. This section is assailed as being in violation of Secs. 3 and 12 of the Declaration of Rights and Art. III, Sec. 16 of the Constitution of Florida.

Sec. 46 provides that if any word, phrase, clause, sentence or section of the Act should be held to be invalid such invalidity shall not be held to affect any other portion of the Act in any manner further than to exclude as inoperative such invalid portions and shall leave effective all other portions of the Act. It also provides that if the provisions of the Act regulating appeals be invalid all matters subject to review may be reviewed by the Supreme Court on certiorari. This section is said to be violative of Art. III, Sec. 16 of the Constitution.

Sec. 47 provides that all persons holding a registration certificate by virtue of existing law shall be deemed a registrant under this Act and all certificates heretofore issued shall be deemed valid until their expiration. It provides for the transfer of all funds existing under the prior laws on this subject to the fund created by this Act; that the commission created under this Act be a continuation of the commission created under the older Act; that no right existing under the other Acts should be disturbed by the provisions of this Act. This section is assailed as being in violation of the "First section of the Fourteenth Article of the Constitution of the United States."

Section 48 provides that the act shall be in force "after it shall become a law except that the registration fee shall be $3.00 for all classes of certificates for the year ending September 30, 1927." No attack is made upon this section.

740

The foregoing summary makes clear the theory and purpose of the law so far as the language in which the statute is framed and the arrangement of its parts permit. The lengthy statement seemed to be necessary not only because of the many constitutional objections to the statute which since its passage appear to have been discovered but because of the form in which the information is cast, which instead of grouping the constitutional provisions to which the act is deemed obnoxious and applying them to the objectionable sections or parts of the act, the sections are assailed seriatim and the provisions of the Constitutions deemed to be appropriate to the criticism of the particular section applied, thereby producing many repetitions and rendering the reading and interpretation of the information most tedious, even laborious.

The act passed the House of Representatives by a vote of seventy-one for its passage to four against it and it passed the Senate by a unanimous vote of all Senators present and voting, twenty-seven in number. It is quite remarkable that a bill under consideration by the legislature, if indeed it is so meretricious as claimed, should have run the gauntlet of legislative criticism and won a place upon the statute books with such practical unanimity of indorsement.

This circumstance emphasizes the wisdom of the rule that before the courts undertake to declare an act to be inoperative as violative of constitutional provisions it should be made to appear beyond a reasonable doubt that it contravenes some express or necessarily implied limitation upon legislative power existing in the Constitution. It has been aptly observed that legislators are under the same oath to support the Constitution and Government of the United States and of the State that officers of the judicial department are and character and loyalty to government may

not be said to be the exclusive possession of either department, nor does correct interpretation of constitutional provisions depend upon any superior knowledge of mysterious or esoteric principles known only to the person who has successfully passed a "bar exam" and become thereby initiated into the fraternity of legal practitioners. The interpretation of a constitution is largely a matter of faithful adherence to the meaning of words which the people ordinarily accept as their usual signification. As said by the court in State v. Butler, 70 Fla. 102, 69 So. R. 771, the language used must be interpreted in a sense most obvious to the common understanding at the time of its adoption. Legislators are as capable as persons occupying judicial positions in ascertaining and applying the meaning of such words to statutory provisions and are presumed to be just as loyal to the government as their brethren of the legal profession occupying judicial offices. So the reason for the rule, that a statute should appear to be unconstitutional beyond a reasonable doubt before the court should assume to say that it is inoperative because of a violation of some constitutional inhibition, is apparent. Cotton v. Leon County, 6 Fla. 610; *Ex parte* Pritcha, *supra;* Neisen v. Moran, *supra.*

The act under consideration is founded upon the principle that certain occupations which it is the right of any person to take up and pursue as vocations in pursuit of happiness, a right secured by the provisions of the Constitution, may nevertheless because of their relation to public welfare be a subject of police regulation and their practice thereby governed by such reasonable rules as may be prescribed by the Legislature in the exercise of its police power.

We have undertaken to show that the occupation sought to be regulated by the act under consideration is such an

occupation. The question therefore is may any provision of the act be deemed unreasonable as lying within constitutional inhibitions upon legislative power and if so may such provision be deleted and the valid portions of the act retained to the end that the purpose of the act in its essential features may be carried out?

In substance the act declares who shall be deemed to be "Real Estate Brokers" and who "Real Estate Salesmen"; that all such persons shall register with the commission which the act creates and designates as the "Florida Real Estate Commission," which is directed to "foster the education of real estate brokers and salesmen concerning the ethical, legal and business principles which should govern their conduct;" that all applicants for registration shall possess certain qualifications which are that they shall be residents of the State, or if a corporation it shall be authorized to do business in this State, and such applicants shall have capacity to make valid contracts and sue and be sued; that all natural persons who are applicants for registration shall be competent, honest, truthful, trustworthy, of good character, and bear a reputation for fair dealing; that the commission shall be vested with the power to ascertain these facts and if it is not satisfied that the applicant is qualified the latter shall be given an opportunity to be heard before the commission upon that matter.

In these provisions we find nothing which is subject to the criticisms made of them.

When the Legislature undertook to regulate the business of real estate broker, or salesman, such was no longer one which any person might at his pleasure take up and engage in. It became a privilege which the State accorded to one upon complying with certain conditions deemed to be essential to ensure that end in the interest of public

welfare which the legislature sought by the enactment of the law.

The ascertainment of the facts constituting the qualifications of applicants for registration necessarily had to be delegated to a legislative agency in this act called a commission. There is nothing violative of constitutional principles, nor even uncommon in our experience and practice, in this. It is nothing more than County Commissioners were empowered to do when the sale of intoxictating liquors was a perfectly legal occupation; nor what the Railroad Commissioners are required to do in ascertaining and prescribing a transportation rate; nor what the various boards of medical, and legal and dental examiners are required to do. See State v. Holmes, 53 Fla. 226, 44 So. R. 179; State v. Brown, 19 Fla. 563.

The subject was fully discussed by MR. JUSTICE RANDALL, then Chief Justice, in the case last above cited. There was a time when the sale of intoxicating liquors was considered by the people to be a lawful business as much so as the sale of other merchandise and when the Legislature placed it in the class of vocations which were subject to police regulation the acts were just as vigorously attacked as the statute involved in this case is attacked. Having decided, however, that the particular business was properly classed as being within the police regulatory power the only question as to the conditions imposed with which an applicant had to comply before obtaining a license was, were they reasonable as being unaffected by constitutional limitations.

In the case at bar, however, the subject dealt with by Chapter 12223, *supra,* is one pertaining to the fundamental rights of the citizen and as to which no unlimited control is vested in the legislature so that the regulations imposed should not be an arbitrary interference and control, that

is to say, the test of unreasonableness is : are the regulations in violation of constitutional limitations.

Judge Cooley says what the legislature ordains and the constitution does not prohibit must be lawful. But if the Constitution does no more than to provide that no person shall be deprived of life, liberty or property except by due process of law, it makes an important provision on this subject because it is an important part of civil liberty to have the right to follow all lawful employments. See Cooley on Torts, (1880) p. 277.

In these constitutional provisions the citizen finds his guaranties to life, liberty and the pursuit of happiness. As expressed by another : ''His right to pursue in his own way any lawful calling or business and his right to property.'' See Bertholf v. O'Reilly, 74 N. Y. 509, 30 Am. R. 323; People v. Marx, 99 N. Y. 377, 2 N. E. R. 29, 52 Am. R. 34; Butchers' Union Slaughter House Company v. Crescent City Live Stock Landing Company, 111 U. S. 746, 28 L. Ed. 585, 4 Sup. Ct. R. 652.

The citizen's right to pursue any lawful business is property that cannot be taken from him without due process of law. It is one of the privileges of a citizen of the United States of which he cannot be deprived without invading his right to liberty within the meaning of the Constitution, said MR. JUSTICE BRADLEY in the case last cited. See also Ex parte Boyce, 27 Nev. 299, 75 Pac. R. 2, 65 L. R. A. 47, 1 Am. and Eng. Cases 66; Corfield v. Coryell, 4 Was. C. C. 371, Fed. Cas. No. 3230; Slaughter House Cases, 16 Wall. 36, 21 L. Ed. (text 419) 394.

The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. These principles are fully discussed in the valuable case of Marymont v. Nevada State Banking

Board, et al., 33 Nev. 333, 111 Pac. R. 295, 32 L. R. A. (N. S.) 477, in an opinion by MR. JUSTICE TALBOT speaking for the court.

We find no provision in the Statute contained in sections numbered 1 to 25 inclusive which we deem to be unreasonable as violative of any provision of the Constitutions, State or Federal, to which it is claimed they are obnoxious except that provision in Sec. 18 prescribing qualifications which the applicants for registration shall possess, requiring every applicant to be a resident of the State of Florida. That clause is violative of Art. IV Sec. 2 and Fourteenth Amendment Constitution of the United States and Sec. 1 Declaration of Rights Florida Constitution, in so far as it applies to natural citizens. It denies to citizens of each state all the privileges and immunities of citizens of this State. In so far as the clause applies to artificial persons, corporations, it may be interpreted to mean that they shall be authorized to do business in this State. In so far as it applies to natural persons we hold that it may be eliminated under authority of State v. Brown, *supra;* State v. A. C. L. Ry. Co., 56 Fla. (text 642) 617, 47 So. R. 969; English v. State, 31 Fla. (text 350) 340, 12 So. R. 689; Sec. 46 Chap. 12223, *supra.*

There is no provision of Sec. 26 which is in derogation of any provision of the Constitution, Federal or State. That section merely vests jurisdiction in the Circuit Court to determine whether the registration of any broker or salesman should be revoked or suspended. We find nothing in the conditions enumerated which constitute ground for such suspension or revocation that may be considered unreasonable.

Sections 27 to 48 are also free from the constitutional objections raised. Those sections merely provide a system of procedure by which any person or corporation against

whom charges are preferred, who may be an applicant for registration or whose registration it is deemed should be revoked or suspended, may have the right of trial. Sec. 31 contains the provision that the cause shall be heard and decided at chambers. Even if such provision may be construed to deny a registrant the right of trial by jury contrary to the Constitution, it may be eliminated or may be construed to be permissive at the option of the defendant.

In any matter relating to investigations by the commission, either upon application of registration or in preparing the information to be lodged in the Circuit Court, the regulations enumerated by the statute and the powers vested in the commission are not unreasonable in the sense of violating any constitutional inhibitions. The purpose of the statute being merely to provide that it shall be the business of some designated agency, the commission, to take the initiative and prepare the case for presentation to the court. To this end the commission is authorized to issue and cause to be served subponeas for witnesses, to hold hearings upon the charges, to make its orders, and prepare the case.

The act secures to the person who may be accused and the revocation of whose certificate is sought the right to appear in court and submit his cause to the properly constituted authority under the Constitution to adjudicate his right of property. The procedure is statutory but it does not prevent any issue of fact, nor the trial of it under the due processes of the law. The defendant cannot be concerned with the ways and means provided by law for the commission to prepare and present its case, he is only concerned with the manner of its decision by the court in which he has a right under the statute to be heard.

The demurrer to the information is sustained and the writ is hereby quashed.

TERRELL, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.

TERRELL, C. J., AND STRUM AND BROWN, J. J., concur specially.

STRUM, J. (Concurring): I concur in the conclusion and judgment herein, as well as in what is said in the foregoing opinion by MR. JUSTICE ELLIS, except that I am of the opinion that the provision of Sec. 18 of the Statute, which requires an applicant for a license to act as a real estate broker to be a resident of Florida, is valid.

The purpose of the Statute under consideration is to stabilize real estate transactions and to protect the public against financial loss through future repetition of un-Scrupulous practices in transactions involving the sale and purchase of real estate. Experiences of the recent past in Florida have demonstrated that the methods followed by many in such dealings, without the restraint of this statute, have readily adapted themselves to the perpetration of deception and imposition. See Goldstein v. Maloney, 62 Fla. 198, 57 So. R. 342; People v. Beakes Dairy Co., 119 N. E. R. 118, 3 A. L. R. 1267. The Statute attempts to accomplish the result stated by permitting only those who possess certain special qualifications of aptitude, ability and integrity to engage in the business of real estate broker.

In his fiduciary relationship to his customer, the broker invites, and usually receives, a high degree of confidence and trust, in the bestowal of which it is competent for

the State to protect the customer by reasonable regulations upon the broker. Quinn v. Phipps, 113 So. R. 419. It is appropriate and lawful, therefore, that adequate, but reasonable, special qualifications, including that of residence in Florida and consequent continued amenability to the process of our courts, be exacted of those who would engage in that business. See 12 C. J. 1120. The reasons for the qualification of residence are manifold, sound, and under the circumstances are lawful, in view of the experiences of the recent past in Florida · when many disingenious practices and impositions were perpetrated by unscrupulous dealers, mostly of nebulous or transitory residence, upon credulous and unwary purchasers.

The requirement as to residence here involved rests upon an entirely different basis, and is wholly different in principle from that wherein, for the purpose of imposing an occupation license tax, a classification is made which arbitrarily discriminates between residents and non-residents, on the ground of residence alone,, without other practical justification in point of fact, thereby unlawfully discriminating against the non-resident solely on account of his residence. See Dusenbury v. Chesney, decided at this Term, opinion filed April 4, 1929, 121 So. R. 567.

I therefore concur in the conclusion and judgment herein, and in the opinion of MR. JUSTICE ELLIS, with the exception hereinabove stated.

TERRELL, C. J., AND BROWN, J., concur.