267 So.2d 817 (1972)
WORLD FAIR FREAKS AND ATTRACTIONS, INC., et al., Appellants-Plaintiffs,
v.
George HODGES, Police Chief, North Bay Village, Florida, et al., Appellees-Defendants.
No. 41494.
Supreme Court of Florida.
October 11, 1972.
Royal Flagg Jonas, Miami Beach, for appellants.
Robert L. Shevin, Atty. Gen., and Barry Scott Richard, Asst. Atty. Gen., for appellees.
DEKLE, Justice.
The constitutionality of Fla. Stat. § 867.01, F.S.A., is brought into question by this direct appeal, vesting jurisdiction. Fla. Const. art. V, § 4(2), F.S.A. The statute prohibits the exhibition for pay or compensation of any crippled or physically-distorted, malformed or disfigured person in any circus, side show or other place where admission fee is charged, and makes the violation thereof punishable by one-year imprisonment or $1,000 fine. Although the final judgment and arguments refer to the total "Ch. 867" which involves a section 2 referring to the exhibition of deformed animals, the questions and arguments presented do not reach this section 2, which is therefore not treated in this appeal. The parties waived oral argument.
Plaintiff Terhune was born a dwarf who has been booked and shown by Plaintiff World Fair Freaks and Attractions; Plaintiff Berent was born with deformed extremities and is generally known as "Sealo the Seal Boy." It is alleged that neither of these plaintiffs has any means of gainful employment except their exhibition publicly for profit, as with Plaintiff Attractions. These two plaintiffs assert that their gainful employment is prevented by virtue of the threat of arrest and of imprisonment or fine under the statute, and that fairs, amusement parks and carnivals have advised that they will not permit their exhibition in face of the statute, resulting in complete loss of income to the individual *818 plaintiffs. Furthermore, the Police Chief of North Bay Village, Florida, has informed plaintiffs that they will be prosecuted under the statute if they should proceed with such exhibitions.
It is plaintiffs' position that:
1. the statute is unconstitutionally discriminatory;
2. it deprives plaintiffs and others similarly situated of their right to work and to earn a living and the corporate plaintiff's right to earn profits from its business;
3. plaintiffs are thereby deprived of their property (livelihood) without due process of law in violation of the U.S. and Florida Constitutions;
4. Fla. Stat. § 867.01, F.S.A., deprives plaintiffs of equal protection under the U.S. and Florida Constitutions;
5. the statute does not protect the public health, morals, safety or general welfare; and
6. Fla. Stat. § 867.01, F.S.A., is vague, indefinite and uncertain and sets no standards for its enforcement.
To be weighed against each other in situations of this kind are the interests of society generally and of the individual in particular. Within the accuracy of our courts' scales lies that freedom and justice which undergird a free society and a viable democracy. Upon the precision and independence with which our courts apply the law and judge the facts depends the outcome of the myriad disputes constantly placed before the tribunals of this state and of this great nation, and, correspondingly, depends the respect and confidence in our courts as the final arbiters among the people and their government, and respect and confidence in the fair, impartial and just application of the law and in law enforcement. It is the finest, most vital challenge faced by the arbiters of justice in a free society.
We must here consider the two basic and often conflicting factors of (1) the equal right of all to earn a living, and (2) the public health, morals and safety of the public in general. It may be that certain malformations, perhaps those relating to private areas of the body or some which may be repulsive or vulgar in nature, would so affect the morals and general welfare as to lend themselves to a prohibition by a proper law which sets appropriate standards. On the other hand, one who is handicapped or in an unfortunate position because of physical handicaps or deformities, in no wise of his own choosing, must be allowed a reasonable chance within his capacities to earn a livelihood. The exhibition could actually be informative and educational of facts and occurrences that the public should see and know regarding certain deformities which result to human beings; to know of the horrors that beset mankind. Apropos is the recently publicized deformities in babies from the use of thalidomide by pregnant women.
The moral argument theorized by the State to bring the subject matter within the police power runs as follows:
"Such exhibitions tend to generate the public concept of physically handicapped and deformed persons as freaks. Such a concept is morally intolerable in light of its impact upon those handicapped and deformed persons who do not care to be looked upon as carnival acts. In addition, such a public concept would logically tend to make it more difficult for physically handicapped and deformed persons to obtain normal employment that they are otherwise capable of engaging in. The result is that the support of such persons ultimately falls upon the State. The State therefore has a legitimate economic interest in fostering enlightened public understanding and attitudes toward the true nature and problems of the physically handicapped and deformed." (p. 2, Appellees' Brief)
We seriously doubt such a result as is suggested; in any event we do not consider *819 such concept as sufficient to support an exercise of the state's police power in the area, at least without properly defined standards as required in such statutes.[1]
It is always a thin line which we must tread in assuring the protection of the rights of individuals and that of the general public as well. In the present instance it would appear that the statute in question must fall because of a lack of any reasonable standards or definitions which can be followed in the enforcement of the statute. In its present form it would be left almost to the unbridled discretion of the individual public official to determine in his own mind by his personal judgment whether or not the exhibition fell within the category of the questioned language of section 867. This lack of standards has been consistently condemned by the courts.[2]
Until some reasonable standard be set in such a statute, it would appear that those individuals in this unfortunate condition who must rely upon such exhibitions for a livelihood should be allowed to do so. We have consistently upheld the individual's right to pursue a lawful occupation and also have held that this is a property right protected by the constitution and the courts.[3] The power to regulate is not synonymous with the power to prohibit absolutely.[4]
The validity of the statute as a regulation for the protection of the public health, morals and welfare seems questionable in light of the fact that the statute is hinged upon the charging of admission. Apparently, there is no prohibition against such exhibitions without charge. This qualification would tend to lodge the statute within the ambit of the argument regarding a prohibition of earning a livelihood in this only manner known to such persons.
Fla. Stat. § 867.01, F.S.A., does not therefore meet constitutional requirements in its failure to set forth reasonable standards to be followed in its application and is declared to be unconstitutional on said ground. The final judgment upholding constitutionality of said statute is accordingly
Reversed.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS and McCAIN, JJ., concur.
BOYD, J., dissents.
NOTES
[1] State ex rel. Lee v. Buchanan, 191 So.2d 33 (Fla. 1966); State v. Llopis, 257 So.2d 17 (Fla. 1971); and Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102 (1947).
[2] See footnote 1.
[3] State ex rel. Davis v. Rose, 97 Fla. 710, 122 So. 225 (1929); State ex rel. Fulton v. Ives, 123 Fla. 401, 167 So. 394 (1936); 6 Fla.Jur., Constitutional Law, § 203.
[4] 52 Am.Jur., Theaters, Shows, Exhibitions, Etc., § 33.