[S. F. No. 16798. In Bank. Nov. 14, 1942.]

CLARENCE URBAN, as Real Estate Commissioner, etc., Petitioner, v. HARRY B. RILEY, as Controller, etc., Respondent.

Earl Warren, Attorney General, and R. L. Chamberlain, Deputy Attorney General, for Petitioner.

James W. Hickey and J. D. Lear for Respondent.

SPENCE, J. pro tem.—Petitioner seeks a writ of mandate to compel the respondent controller to retransfer from the general fund to the real estate fund the sum of $637,851.78, alleged to have been erroneously transferred to the general fund during the years 1919 to 1929 by respondent's predecessors in office. Respondent has filed a demurrer and an answer containing certain denials. Respondent has also pleaded the statute of limitations. For the reasons hereinafter stated, we are of the opinion that the petition does not state facts sufficient to warrant the granting of the relief demanded and we may therefore rest our decision upon that ground.

The funds over which the controversy has arisen were collected and were thereafter transferred to the general fund from time to time under the provisions of the Real Estate Act. (Stats. 1919, p. 1252, as amended; Deering's Gen. Laws, Act. 112.) Section 5 of the act, as adopted in 1919, provided as follows: ''All fees charged and collected under this act shall be paid by the real estate commissioner . . . into the treasury of the state to the credit of a fund to be known as the 'real estate commissioner's fund,' which fund is hereby created. All moneys which shall be paid into the state treasury and credited to the 'real estate commissioner's fund' are hereby appropriated to be used by the commissioner in carrying out the provisions of this act . . . All moneys remaining in the state treasury to the credit of the 'real estate com-

missioner's fund' at noon on the thirty-first day of December of each year shall on or before the fifteenth day of the succeeding January be transferred from said 'real estate commissioner's fund' to the general fund of the state.''

The last sentence of said section 5 has been amended from time to time. (See Stats. 1929, chap. 130; Stats. 1933, chap. 691; Stats. 1937, chap. 757.) Said sentence now reads, ''All moneys in excess of one hundred thousand dollars ($100,000.00) remaining in the State treasury to the credit of the 'Real estate fund' at noon on the thirtieth day of June of each year shall on or before the fifteenth day of the succeeding month be transferred from said 'Real estate fund' to the general fund of the State.'' The several changes made by said amendments have affected only dates, amounts and the name of the fund. The significant fact is that the general plan of providing for the transfer annually of excess moneys into the general fund was incorporated into the original act of 1919 and has been retained throughout all subsequent amendments to said act.

It is alleged in the petition ''That respondent's predecessors in the office of the Controller of the State of California, acting pursuant to the provisions of Section 5 of the Real Estate Act currently applicable, have heretofore transferred various sums from the Real Estate Fund to the General Fund, to a total of $637,851.78, as follows: . . .'' The petition then sets forth the dates and amounts so transferred each year from 1919 to 1929 inclusive, totaling the above mentioned sum. It is then alleged that petitioner has been advised that the provisions of said section 5 providing for the transfer of funds in the real estate fund to the general fund were unconstitutional; that petitioner has demanded that respondent retransfer said sum of $637,851.78 from the general fund to the real estate fund and that respondent has advised petitioner that respondent would not comply with said demand.

It is thus apparent that petitioner concedes that the transfers of the funds in question have heretofore been made in strict conformity with the provisions of section 5 of the act, and that petitioner's demand for the retransfer of said funds to the real estate fund was based solely upon the claim that said provisions of section 5 were unconstitutional. In support of this claim petitioner relied upon the decision of this court in *Daugherty* v. *Riley,* 1 Cal.2d 298 [34 P.2d 1005].

While the position taken by petitioner finds some support

in the language found in the opinion in the Daugherty case, a careful reading of the provisions of the Real Estate Act leads us to the conclusion that the decision in the Daugherty case is not decisive here. It is only necessary to discuss one essential difference between the statute involved in the Daugherty case and the statute involved in the present case.

In the Daugherty case, this court had under consideration a statute which had at all times provided "All moneys which shall be paid into the state treasury and credited to the 'corporation commission fund' are hereby appropriated to be used by the commissioner in carrying out this act." There was never any provision in the statute or the amendments thereto for the transfer to the general fund of any balances in the corporation commission fund. This court stated in the Daugherty case (p. 308) that the revenues placed in the corporation commission fund were "in the nature of a trust fund" and that said revenues were "permanently set apart under the continuing appropriation under section 28 of the Corporate Securities Act for the use of the department." It was therefore held that an appropriation made out of this fund in 1931 (Stats. 1931, p. 51), to meet a deficiency in an appropriation for the construction and furnishing of a state building, was ineffectual.

In the present case, the statute before us bears some resemblance to the statute involved in the Daugherty case but the essential difference is that the Real Estate Act has always contained a provision for the transfer at the end of each year of the balance, or a portion of the balance, of the real estate fund into the general fund. The act has never contained any provision for the retransfer of such balances to the real estate fund or any provision indicating that such balances, after transfer to the general fund, should have any different status from other funds in the general fund. The funds collected under the act are not "permanently set apart . . . for the use of the department," as under the statute considered in the Daugherty case, but such funds are merely temporarily set apart for such use during each fiscal year with the balance, or a portion of the balance, reverting to the general fund for general fund purposes at the end of each fiscal year. This distinction was indicated by this court in *Gillum* v. *Johnson,* 7 Cal.2d 744 [62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595], where it was said on page 758 with respect to the fund there under consideration, "The balances therein do not revert to the general fund at the end

of the fiscal year and under both the state and federal acts constitute trust funds to be administered by the state commission and subject to its call at all times.'' It therefore appears that the wording of the statute before us does not support the claim that all moneys passing through the real estate fund were in the nature of trust funds in the sense in which that term was used in the Daugherty case. We conclude that the portion of said moneys which was transferred to the general fund at the end of each fiscal year from 1921 to 1929 under the provisions of section 5 of the act became a part of the general fund, unencumbered by any trust, and we find no authority for ordering the retransfer of said money or any portion thereof to the real estate fund in the absence of a subsequent appropriation made by the Legislature for that purpose.

Petitioner cites article IV, section 25, subdivision 10; article XIII, section 1; and article IV, section 34 of the state Constitution, but makes no argument as to the applicability of any of these constitutional provisions to the act before us. As petitioner is apparently raising the constitutional objection only with respect to that portion of section 5 of the act under which the transfers were made to the general fund, it appears that petitioner is relying upon the first above mentioned constitutional provision and the language used in the Daugherty case with respect thereto. That language, however, must be restricted in its application to the particular facts before the court in that case. We may assume, without deciding, that the Legislature had the power to impose the fees provided in the act for the purpose of regulation only and not for the purpose of revenue (compare *Ingels* v. *Riley,* 5 Cal.2d 154, 163 [53 P.2d 939, 103 A.L.R. 1] ). This assumption does not, however, render unconstitutional the portion of section 5 which is under attack. ■ Even where the taxing authority has no power to impose fees for revenue, an enactment imposing fees will not be held invalid unless it clearly appears that an arbitrary or unreasonable burden has been imposed upon the pursuit of an occupation under the guise of regulation. The taxing authority may fix the license fees at a sum sufficient to cover all expenses which may be reasonably anticipated and ''is not limited to the exact amount of the expense, as it may subsequently develop.'' (*County of Plumas* v. *Wheeler,* 149 Cal. 758, 765 [87 P. 909].)

■ Petitioner does not claim that the license fees fixed by the act imposed an arbitrary or unreasonable burden upon

the pursuit of an occupation or that the contemplated revenue from said license fees was disproportionate to the contemplated expense of regulation. And while it appears from the allegations of the petition that there was a balance in the real estate fund at the end of each fiscal year from 1921 to 1929, which balance was transferred to the general fund, it further appears that there has never been a sufficient balance in the real estate fund at the end of any fiscal year since 1929 and until 1942 to call for a transfer to the general fund under the terms of section 5. We may conclude that in some years the actual license fees collected under the act produced an amount in excess of the actual expense involved in carrying out the provisions of the act while in other years they did not. This was no doubt due to fluctuations in business conditions. In any event, it has been held that even where the power to license for revenue is not present, the mere fact that an enactment providing for regulatory fees may incidentally produce some revenue does not render such enactment unconstitutional. (*Ard* v. *People,* 66 Colo. 480 [182 P. 892]; *State* v. *Ross,* 101 Kan. 377 [166 P. 505]; *Cache County* v. *Jensen,* 21 Utah 207 [61 P. 303]; *Davis* v. *Hailey,* 143 Tenn. 247 [227 S.W. 1021]; *Rhinehart* v. *State,* 121 Tenn. 420 [117 S.W. 508, 17 Ann.Cas. 254].) We find no valid constitutional objection to the provisions of the Real Estate Act providing for the transfer to the general fund of the excess money, if any, at the end of each fiscal year.

The petition for a peremptory writ of mandate is denied and the alternative writ is discharged.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Traynor, J., concurred.