SOUTHERN BLASTING SERVICES,
INC. and Piedmont Drilling &
Blasting, Inc., Plaintiffs,

v.

WILKES COUNTY, North Carolina, a
body politic, and Kevin D. Bounds,
Wilkes County Fire Marshall, Defen-
dants.

No. 5:98CV102–V.

United States District Court,
W.D. North Carolina.
Statesville Division.

Aug. 10, 2001.

Douglas G. Eisele, Eisele, Ashburn, Greene & Chapman, P.A., Statesville, NC, for plaintiffs.

Anthony R. Triplett, Vannoy, Colvard, Triplett & Vannoy, PLLC, North Wilkesboro, NC, for defendants.

*MEMORANDUM AND ORDER*

RICHARD L. VOORHEES, District Judge.

**THIS MATTER** is before the Court on cross motions for summary judgment:

Plaintiffs' "Motion for Partial Summary Judgment" filed June 28, 1999 [document 17] and Defendants' "Motion for Summary Judgment" filed December 1, 1999 [document 30].

Pursuant to 23 U.S.C. 636(b)(1)(B) and the standing order of designation, this Court referred the aforesaid motions to United States Magistrate Judge Carl Horn for recommended disposition. In a Memorandum and Recommendation filed February 11, 2000, Magistrate Judge Horn recommended that Plaintiffs' "Motion for Partial Summary Judgment" be denied and that Defendants' "Motion for Summary Judgment" be granted. Plaintiffs filed Objections to Judge Horn's recommendation on February 22, 2000. The specific objections raised by Plaintiffs are considered herein.

## I. STANDARD OF REVIEW

The Federal Magistrate Act provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. 636(b)(1); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir.1983). Accordingly, the Court has conducted a careful review of Magistrate Judge Horn's "Memorandum and Recommendation," including a *de novo* review of those issues specifically raised in Plaintiffs' objections.

## II. STATEMENT OF FACTS

Although Plaintiffs object to the Magistrate Judge's characterization of certain events, the material facts of this case are not in dispute. In the summer of 1997, Plaintiffs Southern Blasting Services, Inc. and Piedmont Drilling & Blasting, Inc. set up blasting operations in the Clingman Community of Wilkes County, North Carolina. Due to safety concerns, Defendants Wilkes County and Kevin Bounds, Wilkes Count Fire Marshal, took action in response to Plaintiffs' operations.

At its June 16, 1998 meeting, the Board of County Commissioners ("the Board") adopted the "Wilkes County Explosive Materials Permitting Ordinance" ("Permitting Ordinance"), which was duly recorded in the Wilkes County register of Deeds Office on June 22, 1998.[1] The Permitting Ordinance requires "applicants" to submit detailed information to and obtain a permit from the Wilkes County Fire Marshal prior to possessing, storing, transporting, or other dealing in explosive materials in Wilkes County. (Pl.'s Am. Comp. Ex. 1.) The Permitting Ordinance gives the Fire Marshal decision-making authority over the application process, which includes a public hearing and consultation with the Federal Bureau of Alcohol, Tobacco & Firearms ("ATF"), the Wilkes County Health Department, the Wilkes County Planning Department, the Wilkes County Building Inspections Department, and the Board. In addition, only businesses operating in Wilkes County on the day the Permitting Ordinance was adopted may apply for a permit.

On September 22, 1998, following the necessary approval by the North Carolina Building Code Council, the Board enacted "An Ordinance for the Regulation of Explosive Materials Ordinance in Wilkes County" ("Regulatory Ordinance"). (Pl.'s Am. Comp. Ex. 3.) The Regulatory Ordinance generally addresses the storage and use of explosives in Wilkes County. Specifically, the Regulatory Ordinance prohibits the pre-mixing of explosives and the

---

1. The Permitting Ordinance was subsequently amended by action of the Board of Commissioners on August 4, 1998. The purpose of the amendment was to delay the effective date until a written permit application was developed and distributed.

storing of pre-mixed explosives, requires the installation of security measures at locations where explosives are stored, sets quantity limits on stored explosives, and sets penalties for violations.

While Building Code Council approval of the Regulatory Ordinance was pending, the Fire Marshal on August 6, 1998, issued a directive limiting the hours of operation of vehicles transporting explosive materials on the Bethel and Clingman Roads in Wilkes County. This directive was subsequently amended to reduce the restricted hours of operation. The amended directive (the "Directive") prohibits vehicles transporting explosive materials from operating on the aforementioned roads from 7:00 a.m. to 8:30 a.m. and 2:30 p.m. to 4:00 p.m. on days during which school is open. The Directive is based on the Fire Marshal's concern for the traffic on these roads during school bus hours and the proximity of the Plaintiffs' businesses to the Ronda–Clingman Elementary School. .

Plaintiffs have not applied for a permit. However, they vehemently object to the Ordinances and the Directive on statutory, constitutional, and preemption grounds.

## III. ANALYSIS

### A. *Statutory Authority and the North Carolina Constitution*

Plaintiffs first objection is directed to the validity of the Ordinances and their related enabling statute under of the North Carolina Constitution. The Ordinances were enacted pursuant to authority granted in N.C. GEN. STAT. § 153A–128.[2] That statute provides that "[a] county may by ordinance regulate, restrict, or prohibit the sale, possession, storage, use or conveyance of any explosive, corrosive, inflam-

mable, or radioactive substance ..." § 153A–128. Although their reasoning is not entirely clear, Plaintiffs contend that either § 153A–128 or the Ordinances are "local laws" prohibited by Article II, § 24 of the North Carolina Constitution. As demonstrated below, Plaintiffs' assertions are inaccurate.

Article II, § 24 states in pertinent part:

(1) Prohibited subjects. The General Assembly shall not enact any local, private, or special act or resolution:

(a) Relating to health, sanitation, and the abatement of nuisances;

\* \* \* \* \* \*

(j) Regulating labor, trade, or manufacturing ...

Through this provision, North Carolina has elected to prohibit its *legislature* from promulgating "local acts" relating to, *inter alia*, health, labor, trade and manufacturing. The North Carolina Supreme Court defines "local act" as an enactment by the North Carolina General Assembly which, "in fact, if not in form, is confined within territorial limits other than that of the whole state, or applies to any political subdivision or subdivisions of the state less than the whole ... as distinguished from a law which operates generally throughout the whole state." *McIntyre v. Clarkson*, 254 N.C. 510, 119 S.E.2d 888 (1961); *see also, Smith v. County of Mecklenburg*, 280 N.C. 497, 187 S.E.2d 67 (1972) ("A local act is an act applying to fewer than all counties, in which the affected counties do not rationally differ from the excepted counties in relation to the purpose of the act.").

Plaintiffs confuse "local acts" by the legislature with acts enabling counties to regulate and, apparently, the county ordi-

---

**2.** In addition, the Ordinances refer to N.C.GEN. STAT. § 143–138(b) and (e) as pro- viding a statutory basis.

nances which result. Article II, § 24 does not mention or address the regulatory authority of counties or other local governments. Nor does it prohibit the legislature from empowering counties to regulate in the relevant fields. In fact, the very purposes of Article II, § 24 are to relieve the General Assembly from the "petty detail" of local regulations, to require the General Assembly to devote its time to uniform action on matters of statewide concern, and, thereby, to strengthen local self-government. *High Point Surplus Co. v. Pleasants,* 264 N.C. 650, 142 S.E.2d 697 (1965); *Gardner v. City of Reidsville,* 269 N.C. 581, 153 S.E.2d 139 (1967).

■ Article II, § 24 merely prevents the North Carolina General Assembly from imposing certain regulations which do not receive statewide application. In this regard, § 153A–128 confers authority uniformly on all counties. Consequently, § 153A–128 is a general law that comports perfectly with Article II, § 24. Plaintiff's first objection is entirely without merit.

## B. Due Process

### i. Substantive Due Process

Plaintiffs further object to the Magistrate Judge's finding that the Ordinances are a valid use of the State's "police power" to protect the public, health, safety, and welfare.[3] Specifically, Plaintiffs contend that the record is devoid of evidence which could support a finding that Plaintiffs' operations pose a threat to the citizens of Wilkes County or that the Ordinances are "reasonably necessary" to protect against any perceived harm. In this regard, Plaintiffs note that the only evidence in the record on these issues is presented by Plaintiffs and shows that (1) Plaintiffs know of not a single explosion at a "magazine" site; (2) that the materials used in the explosives industry do not pose a threat to the public health, safety or welfare when stored, used and transported in the manner required by the ATF; and (3) that both Plaintiffs store, use and transport their explosives in the manner required by federal law. Thus, Plaintiffs assert that the Ordinances violate substantive principles of due process and the "Law of the Land" clause of the North Carolina Constitution, Article I, § 19.[4]

■ The Magistrate Judge found that the Ordinances were duly and properly adopted pursuant to Wilkes' County's police power, as directed by N.C. Gen. Stat. § 153A–128. Both federal and state law presume that a duly enacted statute is valid and constitutional. *See Barwick v. Celotex Corp.,* 736 F.2d 946 (4th Cir.1984); *State v. Warren,* 252 N.C. 690, 696, 114 S.E.2d 660, 666 (1960). This presumption also applies to ordinances. *See Linmark Assoc., Inc. v. Township of Willingboro,* 535 F.2d 786, 793 (3rd Cir.1976); *State v. Stallings,* 230 N.C. 252, 254, 52 S.E.2d 901, 903 (1949). Therefore, Plaintiffs bear the burden of proof on all constitutional issues.

■ Economic regulations, such as those at issue here, need only be rationally related to a legitimate state issue to survive federal substantive due process analysis. *See Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)

---

**3.** Plaintiffs also object to the constitutionality of the Directive. However, because the Directive is preempted by federal law, the Court does not reach that issue.

**4.** Article I, Section 19 of the Constitution of North Carolina provides that "[n]o person shall be ... deprived of his life, liberty, or property, but by the law of the land."

(per curiam). Although North Carolina has reserved the right to grant relief under its Constitution in circumstances where no relief is available under the United States Constitution, its "Law of the Land" clause analysis is virtually identical to analysis under the Fourteenth Amendment. *See Treants Enterprises, Inc. v. Onslow County*, 83 N.C.App. 345, 350–52, 350 S.E.2d 365, 369–70 (1986). Thus, with respect to Plaintiffs' substantive due process challenge, Plaintiffs' bear the tremendous burden of showing that the Ordinances are objectively unreasonable.

 As an initial matter, Plaintiffs' suggestion that their explosives operations pose no threat to the public is absurd. Plaintiffs' materials are considered Class I Explosives under the Hazardous Materials Transportation Act ("HMTA") and their operations are already heavily regulated by the ATF. The Ordinances express a rational concern for the possibility that these materials will be subject to theft, fire, and explosion. Indeed, it would be a truly strange decision for a court to find that blasting operations and the storage of inherently hazardous materials do not present matters of legitimate concern.

Moreover, Plaintiffs cannot credibly deny that the Ordinances' "permit and storage" schemes are rationally related to Wilkes County's legitimate desire to minimize the risks of theft, fire, and explosion. The Ordinances tighten security at explosives storage facilities, limit the pre-mixing and storage of volatile materials, and require information on the size, location and duration of any blasting operations. Significantly, in North Carolina, licensing schemes and other regulations have been routinely upheld in occupations which are arguably less threatening to the public. *See State v. Warren*, 252 N.C. 690, 694, 114 S.E.2d 660, 664–65 (1960) (upholding real estate licensing scheme and citing regulat-

ed occupations such as plumbing and heating, accountants, and chiropractic).

In addition, the Court is unpersuaded by Plaintiffs' safety evidence. The fact that Plaintiffs are unaware of any magazine site explosions is simply not conclusive of the irrationality of the Ordinances. Moreover, whether Plaintiffs' operations are already regulated by federal law is irrelevant to the reasonableness of the Ordinances. The significance of any overlap between federal and local regulations is subsumed in the preemption doctrine and is not an element in substantive due process analysis.

Plaintiffs have not, and cannot, demonstrate that the Ordinances are an invalid use of police power. Therefore, this Court finds that the Ordinances, while strict, are objectively reasonable.

### ii. Procedural Due Process

With respect to procedural due process, Plaintiffs assert that by vesting extensive discretionary authority in the Fire Marshal, Wilkes County has inhibited Plaintiffs' ability to engage in a lawful business without due process of law. The Magistrate Judge found that Plaintiffs lack standing to assert this argument. This Court agrees.

 As a general rule, a person who seeks to strike down a state statute must show that "the alleged unconstitutional feature injures him and so operates to deprive him of rights protected by the Federal Constitution." *Plymouth Coal Co. v. Commonwealth of Pennsylvania*, 232 U.S. 531, 544–45, 34 S.Ct. 359, 363, 58 L.Ed. 713 (1914). A plaintiff who has suffered no injury through the offending statute lacks "standing" to seek its invalidation. *Id.* Naturally, certain exceptions exist. For example, statutes which are unduly vague in all in their applications

may be challenged "on their face" as a violation of due process. *See Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). Similarly, in the First Amendment arena, the Supreme Court has relaxed the standing requirements and allowed "on the face" challenges in cases where a public official's discretionary authority may have a chilling effect on free speech. *See Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (parade); *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (newsracks), allowing facial challenges. However, outside the First Amendment arena, it is presumed that discretionary power vested in public officials will *not* be arbitrarily exercised. *Id.; New York ex. rel. Lieberman v. Van De Carr,* 199 U.S. 552, 562, 26 S.Ct. 144, 146–47, 50 L.Ed. 305 (1905). As a result, the federal courts do not recognize "on the face" due process challenges to grants of discretionary authority in trade or economic regulations. *See Plymouth, supra,* (coal mining); *Van De Carr, supra,* (dairy business); *Yazoo & Mississippi Valley R. Co. v. Jackson Vinegar Co.,* 226 U.S. 217, 33 S.Ct. 40, 57 L.Ed. 193 (1912) (railroad), all requiring challenges "as applied."

■ Plaintiffs have not even applied for a permit, much less been denied. Thus, they have suffered no injury under the Permitting Ordinance and are without standing to bring a procedural due process attack. *Accord Oriental Health Spa v. City of Fort Wayne,* 864 F.2d 486, 488–90 (7th Cir.1988) (rejecting procedural due process challenge to licensing and regulatory scheme where plaintiffs were never threatened with revocation or suspension). Plaintiffs urge this Court to address their due process concerns as another

court did in *Union Pacific Railroad Company v. City of Las Vegas,* 747 F.Supp. 1402, 1404 (D.Nev.1989). However, *Union Pacific* is easily distinguishable from the instant case. At issue in *Union Pacific* was whether Las Vegas' hazardous material ordinances were facially vague. *Id.* at 1404. As noted above, in certain circumstances, the vagueness of a statute may be considered prior to its application. In the instant case, Plaintiffs challenge only the breadth of the Fire Marshal's discretion and not the clarity of the Permitting Ordinance's proscriptions. Thus, *Union Pacific* is inapposite.

For these reasons, Plaintiffs' police power and due process objections are without merit.

## C. Preemption

Plaintiffs further contend that the Ordinances and Directive are void and unenforceable because of the preemption doctrine applicable to the subject matter. Plaintiffs take exception to two different legal conclusions reached by the Magistrate Judge with respect to federal preemption. First, the Magistrate Judge concluded that the Ordinances are not preempted by 18 U.S.C. § 848. Second, the Magistrate Judge also found that the Directive is not preempted by the relevant provisions of the HTMA and Chapter 49 of the Code of Federal Regulations. *See* 49 U.S.C. §§ 5101–5127; 49 CFR §§ 397.65, 397.69, & 397.71. This Court will discuss each of those conclusions.

### i. Preemption Under Chapter 40

■ The preemption doctrine has its roots in the Supremacy Clause, which elevates federal law above that of the states. *See Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 92–93, 6 L.Ed. 23 (1824). State regulations in areas where Congress has either expressly or impliedly exercised ex-

clusive authority are preempted. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 236, 67 S.Ct. 1146, 1155, 91 L.Ed. 1447 (1947). Obviously, Congress may expressly preempt state regulations through statutory provisions. Preemption is implied where "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). Preemption is also implied where an actual conflict arises between federal and state regulations making compliance with both a "physical impossibility." *Id.* at 713, 105 S.Ct. at 2375. This case happens to concern express preemption.

Federal regulation of the importation, manufacture, distribution and storage of explosive materials is governed by Chapter 40, Title 18 of the United States Code, 18 U.S.C. §§ 841 through 848. Section 848 is entitled "Effect on State law" and provides:

> No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict with such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

Plaintiffs first argue that under § 848 county regulation of explosive materials are totally without effect. Plaintiffs note that § 848 makes no reference to county ordinances, but refers instead to preemption of "the law of any State . . ." Plaintiffs contend that it flows logically that counties are completely prohibited from regulating in this field. The Court disagrees.

Presumably, Plaintiffs interpret § 848 to establish a general rule of preemption with an exemption for regulations enacted by the States *qua* States. The Court reads § 848 differently. Clearly, § 848 is designed to limit the preemptive scope of Chapter 40 and therefore does not express a general rule of preemption. *Compare* § 848 *with* 49 U.S.C. § 14501(c) (strictly forbidding local and state government's from regulating motor carriers of property). On the contrary, § 848 disclaims any intent to occupy the field and restricts preemption to those instances where "the law of the state" creates a "direct and positive conflict." Thus, if "law of the State" were interpreted to exclude local regulations, as Plaintiffs contend, then local regulations would not be subject to preemption under § 848.

In any event, the Court sees no reason to believe Congress intended to treat local and State regulations differently. In general, "the constitutionality of local ordinances is analyzed the same way as that of statewide laws." *Hillsborough,* 471 U.S. at 713, 105 S.Ct. at 2375. Furthermore, the only logical interpretation of § 848 is that local regulations, ordinances, and statewide laws all comprise the "law of the State." Case law is in accord. *See City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (interpreting 28 U.S.C. § 1254(2) to allow Supreme Court to hear appeal of decision holding local ordinance unconstitutional where statute only provided for appeal from "state law"); *Isla Petroleum Corp. v. Dept. of Consumer Affairs,* 640 F.Supp. 474, 507 (D.Puerto Rico 1986) ("Under a preemption doctrine analysis, local regulations or ordinances have the same standing as state statutes". They all comprise the term "state laws.")

Therefore, with respect to the substance of the Wilkes County regulations, Plaintiffs bear the burden of showing a "direct and positive conflict" with federal law.

§ 848. However, Plaintiffs have done very little to demonstrate the existence of any particular conflict. Instead, Plaintiffs refer the Court to the Ordinances and to 27 C.F.R. Part 55 for comparison *in toto.*

On the other hand, Defendants have adduced convincing evidence in rebuttal. The Department of the Treasury, ATF, is the agency authorized to issue and administer rules and regulations under Chapter 40 of Title 18 of the United States Code. In a publication entitled "ATF—Explosives Law and Regulations," the Department of the Treasury asks and answers the following question:

> **20. Does a Federal license or permit exempt the holder from State or local requirements?**
>
> No. A license or permit confers no right or privilege to conduct business or operations, including storage, contrary to State or other law. [§ 55.52]
>
> Where a situation arises that State or local requirements are more stringent than the Federal, the *more* stringent requirement must be followed.

ATF P 5400.7 (June 1990) (emphasis in original).

In addition, on August 2, 1999, counsel for Defendants requested the ATF's analysis of whether the Ordinances would preclude compliance with federal law. The ATF responded that while the Ordinances "contain some provisions which are more stringent than those contained in Chapter 40 [18 U.S.C. §§ 841, et seq.], it does not appear that compliance with the Wilkes County Ordinances would result in a violation of Chapter 40."

■ Considering the paucity of direct support, there is little doubt but that Plaintiffs have failed to meet their heavy burden. Moreover, Defendant's evidence is compelling. Accordingly, the Court concludes that the Ordinances are not preempted by § 848 or the Code of Federal Regulations.

### ii. Preemption under the HMTA

The Court differs with the Magistrate Judge's conclusion on preemption of the Fire Marshal's directive under the HMTA. The explosive materials being transported by the Plaintiffs are clearly "hazardous materials" in commerce for which vehicle placarding is required under the HMTA. The preemption provisions of the HMTA became effective November 14, 1996. *See* 49 C.F.R. § 397.69(b). Under the preemption provisions, state or local routing designations established or modified after November 14, 1996 must comply with the procedural criteria set forth in 49 C.F.R. § 397.71. *See* 49 C.F.R. § 397.69(a). If a routing designation enacted or modified after that date fails to comply with 49 C.F.R. § 397.71, it is preempted. *See* 49 C.F.R. § 397.69(b). However, a highway routing designation established by a State before November 14, 1996 is subject to a less stringent preemption regime. *See* 49 C.F.R. § 397.69(c).[5]

■ Defendants maintain, and the Magistrate Judge agrees, that the Fire Marshal's Directive falls within the less stringent preemption provision. Defendants argue that the Directive was based in its entirety on the North Carolina State

---

**5.** Section 397.69(c) refers preemption of designations that pre-date federal regulation to § 397.203 which provides:

**Standards for Determining Preemption.**
(a) Any highway routing designation established, maintained, or enforced by a State, political subdivision thereof, or Indian tribe is preempted if -

(1) Compliance with both the highway routing designation and any requirement under the Act or of a regulation issued under he Act is not possible;
(2) The highway routing designation as applied or enforced creates an obstacle to the accomplishment and execution of the Act or the regulations issued under the Act ...

Building Code, Volume V, which contains the State Fire Code. The pertinent section of the Fire Code provides:

> Vehicles transporting explosive materials shall be routed to avoid congested traffic and heavily populated areas. The fire official may designate such routes of travel and the time(s) of use.

Chapter 19, § 1903.2.11. That statute became effective July 1, 1991, predating the effective date of the regulations under 49 U.S.C. § 5112(b) by more than five years. Defendants assert that the fact that the Fire Code predated the regulations is sufficient to remove the Ordinance from the preemption provisions of 49 C.F.R. § 397.69(a) and 49 C.F.R. § 397.71. The Court disagrees.

The pertinent regulations apply specifically to "routing designations." *See* 49 C.F.R. § 397.69(c). "Routing designations" are defined as "[a]ny regulation, limitation, restriction, curfew, time of travel restriction, lane restriction, routing ban, port-of-entry designation, or route weight restriction, applicable to the highway transportation of NRHM [non-radioactive hazardous material] over a specific highway route or portion of a route." 49 C.F.R. § 397.65. Defendants concede, as they must, that the Directive is a routing designation. Thus, the Directive is undeniably subject to the more stringent preemption regime.

On the other hand, § 1903.2.11 of the Fire Code is *not* a routing designation, in part because it is generally applicable and not "applicable ... over a specific highway route or portion of a route." 49 C.F.R. § 397.65. Rather, that section is merely the provision of the fire code which authorizes routing designations. No logical reason exists for using the effective date of the Fire Code as the measuring date for the disputed routing designation.

The Court also disagrees with the Magistrate Judge's conclusion that the Directive may alternatively stand on a combination of provisions in 49 U.S.C. §§ 5125(a) and 14501(c)(2)(A). Section 5125(a) specifically exempts from the HMTA preemption requirements State and local regulations "authorized by another law of the United States." The Magistrate Judge concluded that the Directive is authorized by § 14501(c)(2)(A). Such is not the case.

Section 14501(c)(1) establishes a general rule of preemption of state and local regulations of motor carriers of property. However, § 14501(c)(2)(A) provides that § 14501(c)(1) "shall not restrict the safety regulatory authority of a State with respect to motor vehicles ... to impose route controls or limitations based on ... the hazardous nature of cargo." Thus, § 14501(c)(2)(A) is merely an exception to the preemptive scope § 14501(c)(1) and not a law generally "authorizing" regulation. Significantly, the broad construction of · § 14501(c)(2)(A) that Defendants press would eviscerate the HMTA's preemptive scheme.

■ What is more, § 14501(c)(2)(C) does · not even operate to exempt the Wilkes County Fire Marshal from preemption. The term "political subdivision[s]" is mentioned seven times in § 14501. *See e.g.,* 14501(c)(2)(C). However, the term is notably absent from § 14501(c)(2)(A). Consequently, it is only logical to interpret that section narrowly and to find that it does not exempt political subdivisions of the states from the preemptory language of § 14501(c)(1). *See Petrey v. City of Toledo,* 246 F.3d 548, 565–66 (6th Cir. 2001); *Tocher v. City of Santa Ana,* 219 F.3d 1040, 1050–51 (9th Cir.2000); *R. Mayer of Atlanta, Inc. v. City of Atlanta,* 158 F.3d 538, 545–48 (11th Cir.1998) all holding political subdivisions not exempt, *but see also, Ace Auto Body and Towing, Ltd. v. City of New York,* 171 F.3d 765,

775–76 (2d Cir.1999) (holding City of New York exempt).

The Directive is unquestionably subject to the standards contained 49 C.F.R. § 397.71. Defendants do not contend that the Fire Marshal made any attempt to observe those standards in the enactment of the Directive. Therefore, the Directive is preempted by federal law and the Court will enter an appropriate order declaring the Directive void and unenforceable.

### III. ORDER

NOW, THEREFORE, IT IS OR-DERED that Plaintiffs' "Motion for Partial Summary Judgment" be, and hereby is, **GRANTED IN PART** and **DENIED IN PART** as aforesaid.

IT IS FURTHER ORDERED that Defendants' "Motion for Summary Judgment" be, and hereby is, **GRANTED IN PART** and **DENIED IN PART** as aforesaid.

IT IS FURTHER ORDERED that the Wilkes County Fire Marshal's Directive issued August 6, 1998 and amended August 19, 1998, prohibiting vehicles transporting explosive materials from operating on the Bethel or Clingman Roads from 7:00 a.m. to 8:30 a.m. and from 2:30 p.m. to 4:00 p.m. on school days is preempted by federal law and is therefore void and unenforceable.

IT IS FURTHER ORDERED that a Permanent Injunction shall issue and Wilkes County, its agents, employees and all other persons, firms or corporations acting or claiming to act on its behalf are permanently enjoined and restrained from enforcing the Fire Marshal's Directive of August 6, 1998, and as amended, limiting the hours of operation of vehicles transporting explosive materials on the Bethel and Clingman Roads in Wilkes County.

The Court will enter an appropriate Judgment corresponding to the terms of this Order.

### JUDGMENT

This matter came before the Court on cross motions for summary judgment. In an Order filed simultaneously herewith the Court decided that the disputed Fire Marshal's Directive is preempted but the disputed Ordinances comport with state and federal law. The Court has **EN-JOINED** enforcement of the preempted regulation and in accordance with the Court's Order, **IT IS HEREBY OR-DERED, ADJUDGED, AND DECREED** that Plaintiffs' challenges to validity of the Ordinances are **DISMISSED WITH PREJUDICE.**